The State of Ohio, Appellee, *v.* Sharpe, Appellant.

[Cite as State v. Sharpe, 1 Ohio App. 2d 425.]

(No. 9614—Decided January 18, 1965.)

*Mr. William A. McClain,* city solicitor, *Mr. Ralph E. Cors* and *Mr. Joseph H. Johnson,* for appellee.
*Mr. Frederick Valentine,* for appellant.

*Per Curiam.* Appellant was convicted in the Municipal Court of Cincinnati on a charge of soliciting an unnatural sex act contrary to the provision of Section 2905.30 of the Revised Code, as amended effective October 4, 1963. A demurrer was filed in the court below on various grounds, including the claim that the statute was void for want of certainty in that it failed to provide any definition of or standard for determining what may or may not be "an unnatural sexual act." The claim was renewed during trial at the end of the state's case by motion. Both demurrer and motion were overruled in the court below. The transcript of the docket and journal entries filed in this court fails to indicate that the demurrer was actually overruled; however, reference to the bill of exceptions establishes that this was so.

The assignments of error filed in connection with this appeal raise substantially the same questions as the demurrer and the motion to dismiss and claim that, in addition to the above, the court erred in failing to define "an unnatural sex act" in its charge to the jury. Other assignments of error of the appel-

lant are either of no importance or were specifically waived in the course of argument in this court. The demurrer and motion above sufficiently raise a constitutional question.

Counsel for both parties, by brief and during oral argument, admit that they have been unable to find in reported cases or in any of the usual sources of legal authority any definition of the phrase "unnatural sexual act." With one possible exception, hereinafter noted, the court finds itself in much the same position. This condition in and of itself provides some reasonable basis to doubt whether the phrase in question is actually susceptible to that certainty of definition which is ordinarily required in criminal offenses. We find no previous cases dealing with the amended provisions of this "new" crime.

Much authority can be found dealing with and defining such terms as "sexual offenses," "sexual perverts," "sexually indecent," "unlawful sexual intercourse," "sex perversion" and similar phraseology. None of them fits the requirements of the amended Ohio statute. Both parties refer to *Jaquith* v. *Commonwealth* (1954), 331 Mass. 439, 120 N. E. 2d 189. In that case the court was concerned with a statute making it an offense to commit "any unnatural and lascivious act with another person" in which, to epitomize the lengthy opinion, it was held "that 'an unnautral and lascivious act' are words of common usage with a well defined, well understood, and generally accepted meaning, signifying irregular indulgence in sexual behavior, illicit sexual relations, and infamous conduct which is lustful, obscene, and in deviation of accepted customs and manners * * *." It is suggested by appellant that there is a distinction of sorts between an unnatural sex act and one that is unnatural and lascivious. However, so far as this court is concerned, while there may be a difference which would tend to strengthen the Massachusetts decision, the difference is not determinative of the question here.

The sociological and biological range of sex acts is almost infinite, going from so-called Freudian impulses, alleged by some to exist in all human behavior, to the viewpoint that all sex acts which do not lead to the production of offspring are unnatural. Disregarding these extreme viewpoints, it is yet

apparent that many sex acts which may be logically classified as unnatural have widespread acceptance and frequent use. By way of example: Certain types of birth control are obviously unnatural; also, the practice of artificial insemination, although rare and frequently criticized, would certainly not be intended to be a criminal act under this statute, albeit it is obviously unnatural. Various types of sex acts useful in or even required for medical diagnostic practices are equally unnatural. Depending upon laws in existence in most states but varying distinctly between them, such things as intercourse within certain proscribed age limits, incest depending upon a varying degree of relationship, and, possibly in some states, even miscegenation, are considered both unlawful and unnatural.

While these examples could probably be multiplied, they are sufficient to demonstrate the uncertainty and vagueness inherent in this statute and, along with it, the impossibility of its reasonable application. It is not sufficient to recognize that the unnatural sex act, sodomy, which was undoubtedly the purpose of the solicitation involved in this particular case, is regarded generally in its various forms, both heterosexual and homosexual, as a crime. In spite of the possibility that a trial jury may apply reason and discretion in determining what is and is not an unnatural sex act upon the evidence of a specific case, the objection still exists that persons, innocent or otherwise, are obviously subject to arrest and prosecution under this statute without having any positive guide whereby the solicitor or the solicited may know whether the act proposed is unnatural. Even the policeman does not have a sufficient standard to determine whether what he may have seen or heard requires an arrest.

There is no doubt that legislation in this general area of human behavior can be wholly legitimate and is probably needed. Whatever evil the Legislature may feel to exist can be controlled in various ways—the obvious way being to prohibit solicitation of those sex acts, the indulgence in which the law has already declared to be illegal, by specific terms and definition.

It was noted above that neither counsel nor the court has been able to find any judicial definition of an unnatural sex act. An Ohio case which, however, involved a claim of libel rather

than the violation of a criminal statute points up the problem involved in determining what may or may not be an unnatural sex act.

In *Williams* v. *P. W. Publishing Co.* (1957), 76 Ohio Law Abs. 404, the Court of Appeals for Cuyahoga County was concerned with a libel action in which the plaintiff in a divorce petition had been accused by her husband of seeking "to have sexual relations with * * * [him] in an unnatural manner, much to * * * [his] disgust * * *; that * * * [she] harassed and nagged * * * [him] to allow the unnatural acts to be done, while * * * [he] at all times refused." In reporting the filing as a public record the defendant publishing company, instead of using the words above or their equivalent, published the allegation that the wife urged the husband "to submit to such sex perversion." It was claimed the publication was libelous because of the marked difference between "unnatural acts" as alleged in the pleading and "sex perversion" as printed in the newspaper. With this claim the court was in agreement noting that sex perversion "connotes but one concept—viz., the aberrant satisfaction of sexual desires through other than normal copulative procedures. It is, accordingly, a term of greater opprobrium than is the phrase 'sexual relations in an unnatural manner.'" The court points out that the phrase, "sexual relations in an unnatural manner," is susceptible of two or more interpretations in that it may be deemed not only the construction attached to the phrase "sex perversion," but it may also be deemed to be copulation in the normal manner but in an unusual or unnatural position or location.

The claim of the appellant that the defendant, because of his peculiar tendencies and appetites, must be judged subjectively, since this behavior is possibly natural to him, is, of course, nonsense. The very purpose of law is to establish a standard of conduct conducive to the needs and welfare of the community. To set this standard by what is natural to the community's pariahs is to say that the abnormal should be the standard, and the normal and natural might become the peculiar to some few persons. A subjective defense to any crime would produce nothing but anarchy. For those individuals whose antisocial or criminal tendencies impel them to commit prohibited acts, there

are penal institutions and mental hospitals. The problem is very succinctly stated in a dissenting opinion of Mr. Justice John Harlan of the Supreme Court of the United States in *Poe* v. *Ullman*, 367 U. S. 497, at 547, where he says in connection with the Connecticut birth control statute, "The secular state is not an examiner of consciences: it must operate in the realm of behavior."

As stated above, however, in view of the total impossibility of defining the phrase "an unnatural sexual act" in a manner that will accomplish a legitimate legislative purpose, the statute as amended must be held to be so vague and uncertain as to be unconstitutional and void. It should be noted in passing that the trial court in its charge to the jury did not attempt any definition or discussion whatsoever of the statutory language— probably because it recognized the impossibility of an acceptable definition.

The conviction is accordingly reversed. Since there is no possibility of an amended or corrected charge, or of producing any new or sufficient evidence by way of a new trial, the cause must be remanded to the Municipal Court with instructions to dismiss the defendant.

*Judgment reversed.*

Hover, P. J., Hildebrant and Long, JJ., concur.