ROSE, WARDEN *v.* LOCKE

No. 74–1451. Decided November 17, 1975

PER CURIAM.

Respondent was convicted in the Criminal Court for Knox County, Tenn., of having committed a "crime against nature" in violation of Tenn. Code Ann. § 39–707 (1955).[1] The evidence showed that he had entered the apartment of a female neighbor late at night on the pretext of using the telephone. Once inside, he produced a butcher knife, forced his neighbor to partially disrobe, and compelled her to submit to his twice performing cunnilingus upon her. He was sentenced to five to seven years' imprisonment. The Tennessee Court of Criminal Appeals affirmed the conviction, rejecting respondent's

---

[1] "39–707. Crimes against nature—Penalty.—Crimes against nature, either with mankind or any beast, are punishable by imprisonment in the penitentiary not less than five (5) years nor more than fifteen (15) years."

claim that the Tennessee statute's proscription of "crimes against nature" did not encompass cunnilingus, as well as his contention that the statute was unconstitutionally vague. 501 S. W. 2d 826 (1973). The Supreme Court of Tennessee denied review.

Respondent renewed his constitutional claim in a petition for a writ of habeas corpus filed in the District Court for the Eastern District of Tennessee.[2] The District Court denied respondent's petition, holding that when considered in light of previous interpretations by the courts of Tennessee, § 39–707 was "not unconstitutionally vague nor impermissibly overbroad."

Respondent appealed to the Court of Appeals for the Sixth Circuit, and that court sustained his constitutional challenge. Believing that the statutory term "crimes against nature" could not "in and of itself withstand a charge of unconstitutional vagueness" and being unable to find any Tennessee opinion previously applying the statute to the act of cunnilingus, the Court of Appeals held that the statute failed to give respondent "fair warning." 514 F. 2d 570 (1975).

It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States* v. *Harriss,* 347 U. S. 612, 617 (1954); see *Wainwright* v. *Stone,* 414 U. S. 21, 22 (1973). But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many

---

[2] Respondent also sought relief on the theory that he was denied due process of law because he was convicted on the uncorroborated testimony of his victim. The District Court dismissed this ground as failing "to state a claim of constitutional significance," and respondent does not appear to have pursued it.

statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." *Robinson* v. *United States,* 324 U. S. 282, 286 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. Cf. *Nash* v. *United States,* 229 U. S. 373 (1913); *United States* v. *National Dairy Corp.,* 372 U. S. 29 (1963). All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.[3]

Viewed against this standard, the phrase "crimes against nature" is no more vague than many other terms used to describe criminal offenses at common law and now codified in state and federal penal codes. The phrase has been in use among English-speaking people for many centuries, see 4 W. Blackstone, Commentaries *216, and a substantial number of jurisdictions in this country continue to utilize it. See Note, The Crimes Against Nature, 16 J. Pub. L. 159, 162 n. 19 (1967). Anyone who cared to do so could certainly determine what particular acts have been considered crimes against nature, and there can be no contention that the respondent's acts were ones never before considered as such. See, *e. g., Comer* v. *State,* 21 Ga. App. 306, 94 S. E. 314 (1917); *State* v. *Townsend,* 145 Me. 384, 71 A. 2d 517 (1950).

Respondent argued that the vice in the Tennessee statute derives from the fact that jurisdictions differ as to whether "crime against nature" is to be narrowly applied to only those acts constituting the common-law offense

---

[3] This is not a case in which the statute threatens a fundamental right such as freedom of speech so as to call for any special judicial scrutiny, see *Smith* v. *Goguen,* 415 U. S. 566, 572–573 (1974).

of sodomy, or is to be broadly interpreted to encompass additional forms of sexual aberration. We do not understand him to contend that the broad interpretation is itself impermissibly vague; nor do we think he could successfully do so. We have twice before upheld statutes against similar challenges. In *State* v. *Crawford,* 478 S. W. 2d 314 (1972), the Supreme Court of Missouri rejected a claim that its crime-against-nature statute was so devoid of definition as to be unconstitutional, pointing out that its provision was derived from early English law and broadly embraced sodomy, bestiality, buggery, fellatio, and cunnilingus within its terms. We dismissed the appeal from this judgment as failing to present a substantial federal question. *Crawford* v. *Missouri,* 409 U. S. 811 (1972); see *Hicks* v. *Miranda,* 422 U. S. 332, 343–345 (1975). And in *Wainwright* v. *Stone, supra,* we held that a Florida statute proscribing "the abominable and detestable crime against nature" was not unconstitutionally vague, despite the fact that the State Supreme Court had recently changed its mind about the statute's permissible scope.

The Court of Appeals, relying on language in *Stone,* apparently believed these cases turned upon the fact that the state courts had previously construed their statutes to cover the same acts with which the defendants therein were charged. But although *Stone* demonstrated that the existence of previous applications of a particular statute to one set of facts forecloses lack-of-fair-warning challenges to subsequent prosecutions of factually identical conduct, it did not hold that such applications were a prerequisite to a statute's withstanding constitutional attack. If that were the case it would be extremely difficult ever to mount an effective prosecution based upon the broader of two reasonable constructions of newly enacted or previously unapplied statutes, even

though a neighboring jurisdiction had been applying the broader construction of its identically worded provision for years.

Respondent seems to argue instead that because some jurisdictions have taken a narrow view of "crime against nature" and some a broader interpretation, it could not be determined which approach Tennessee would take, making it therefore impossible for him to know if § 39–707 covered forced cunnilingus. But even assuming the correctness of such an argument if there were no indication which interpretation Tennessee might adopt, it is not available here. Respondent is simply mistaken in his view of Tennessee law. As early as 1955 Tennessee had expressly rejected a claim that "crime against nature" did not cover fellatio, repudiating those jurisdictions which had taken a "narrow restrictive definition of the offense." *Fisher* v. *State,* 197 Tenn. 594, 277 S. W. 2d 340. And four years later the Tennessee Supreme Court reiterated its view of the coverage intended by § 39–707. Emphasizing that the Tennessee statute's proscription encompasses the broad meaning, the court quoted from a Maine decision it had earlier cited with approval to the effect that " 'the prohibition brings all unnatural copulation with mankind or a beast, including sodomy, within its scope.' " *Sherrill* v. *State,* 204 Tenn. 427, 429, 321 S. W. 2d 811, 812 (1959), quoting from *State* v. *Cyr,* 135 Me. 513, 198 A. 743 (1938). And the Maine statute, which the Tennessee court had at that point twice equated with its own, had been applied to cunnilingus before either Tennessee decision. *State* v. *Townsend, supra.* Thus, we think the Tennessee Supreme Court had given sufficiently clear notice that § 39–707 would receive the broader of two plausible interpretations, and would be applied to acts such as those committed here when such a case arose.

This also serves to distinguish this case from *Bouie* v. *City of Columbia,* 378 U. S. 347 (1964), a decision the Court of Appeals thought controlling. In *Bouie,* the Court held that an unforeseeable judicial enlargement of a criminal statute narrow and precise on its face violated the Due Process Clause. It pointed out that such a process may lull "the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction." 378 U. S., at 352. But as we have noted, respondent can make no claim that § 39–707 afforded no notice that his conduct might be within its scope. Other jurisdictions had already reasonably construed identical statutory language to apply to such acts. And given the Tennessee court's clear pronouncements that its statute was intended to effect broad coverage, there was nothing to indicate, clearly or otherwise, that respondent's acts were outside the scope of § 39–707. . There is no possibility of retroactive lawmaking here. See 378 U. S., at 353–354. Accordingly, the petition for certiorari and respondent's motion to proceed *in forma pauperis* are granted, and the judgment of the Court of Appeals is reversed.

*So ordered.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL concurs, dissenting.

I dissent from the Court's summary reversal. The offense of "crimes against nature" at common law was narrowly limited to copulation *per anum.* American jurisdictions, however, expanded the term—some broadly and some narrowly—to include other sexual "aberrations." Of particular significance for this case, as the Court of Appeals accurately stated, "courts have differed widely

in construing the reach of 'crimes against nature' to cunnilingus." 514 F. 2d 570, 571.

The Court holds, however, that because "[o]ther jurisdictions had already reasonably construed identical statutory language to apply to [cunnilingus] . . . given the Tennessee court's clear pronouncements that its statute was intended to effect broad coverage, there was nothing to indicate, clearly or otherwise, that respondent's acts were outside the scope of § 39–707." *Ante,* at 53. In other words the traditional test of vagueness—whether the statute gives fair warning that one's conduct is criminal—is supplanted by a test of whether there is anything in the statute "to indicate, clearly or otherwise, that respondent's acts were outside the scope of" the statute. This stands the test of unconstitutional vagueness on its head. And this startling change in vagueness law is accompanied by the equally startling holding that, although the Tennessee courts had not previously construed "crimes against nature" to include cunnilingus, respondent cannot be heard to claim that § 39–707 therefore afforded no notice that his conduct fell within its scope, because he was on notice that Tennessee courts favored a broad reach of "crimes against nature" and other state courts favoring a broad reach had construed their state statutes to include cunnilingus.

Yet these extraordinary distortions of the principle that the Due Process Clause prohibits the States from holding an individual criminally responsible for conduct when the statute did not give fair warning that the conduct was criminal, are perpetrated without plenary review affording the parties an opportunity to brief and argue the issues orally. It is difficult to recall a more patent instance of judicial irresponsibility. For without plenary review the Court announces today, contrary to our prior decisions, that even when the statute he is

charged with violating fails of itself to give fair warning, one acts at his peril if the state court has indicated a tendency to construe the pertinent statute broadly, and some other state court of like persuasion has construed its state statute to embrace the conduct made the subject of the charge. I simply cannot comprehend how the fact that one state court has judicially construed its otherwise vague criminal statute to include particular conduct can, without explicit adoption of that state court's construction by the courts of the charging State, render an uninterpreted statute of the latter State also sufficiently concrete to withstand a charge of unconstitutional vagueness. But apart from the merits of the proposition, surely the citizens of this country are entitled to plenary review of its soundness before being required to attempt to conform their conduct to this drastically new standard. Today's holding surely flies in the face of the line of our recent decisions that have struck down statutes as vague and overbroad, although other state courts had previously construed their like statutes to withstand challenges of vagueness and overbreadth. See, *e. g.,* the "abusive language" decisions of which *Gooding* v. *Wilson,* 405 U. S. 518 (1972), is illustrative.

Nor will the Court's assertions that the Tennessee courts had in any event in effect construed the Tennessee statute to include cunnilingus withstand analysis. The Court relies on a 1955 Tennessee decision that had held that "crimes against nature" include fellatio, the Tennessee court rejecting the contention that the statute was limited to the common-law copulation-*per-anum* scope of the phrase. The Tennessee court in that opinion cited a Maine case, decided in 1938, *State* v. *Cyr,* 135 Me. 513, 198 A. 743, where the Maine court had applied a "crimes against nature" statute to fellatio.

But the Tennessee court did not also cite a 1950 Maine decision, *State* v. *Townsend,* 145 Me. 384, 71 A. 2d 517, that applied Maine's "crimes against nature" statute to cunnilingus. *Fisher* v. *State,* 197 Tenn. 594, 277 S. W. 2d 340 (1955). Four years later, in 1959, in another fellatio case, the Tennessee court again made no mention of *Townsend,* although quoting from *Cyr*'s holding that the Maine statute applies to " 'all unnatural copulation with mankind or a beast, including sodomy.' " *Sherrill* v. *State,* 204 Tenn. 427, 429, 321 S. W. 2d 811, 812 (1959). Despite this significant failure of the Tennessee court to cite *Townsend,* and solely on the strength of the Tennessee court's general "equating" of the Maine statute with the Tennessee statute, this Court holds today that respondent had sufficient notice that the Tennessee statute would receive a "broad" interpretation that would embrace cunnilingus.

This 1974 attempt to bootstrap 1950 Maine law for the first time into the Tennessee statute must obviously fail if the principle of fair warning is to have any meaning. When the Maine court in 1938 applied its statute broadly to all "unnatural copulation," nothing said by the Maine court suggested that that phrase reached cunnilingus. The common-law "crime against nature," limited to, copulation *per anum,* required penetration as an essential element. In holding that a "broad" reading of that phrase should encompass all unnatural copulation including fellatio—copulation *per os*—Maine could not reasonably be understood as including cunnilingus in that category. Other jurisdictions, though on their State's particular statutory language, have drawn that distinction. See, *e. g., Riley* v. *Garrett,* 219 Ga. 345, 133 S. E. 2d 367 (1963); *State* v. *Tarrant,* 83 Ohio App. 199, 80 N. E. 2d 509 (1948). Thus, when the Tennessee court in 1955 adopted the language of Maine's 1938 *Cyr*

case, a Tennessee citizen had at most notice of developments in Maine law through 1938. That Maine subsequently in 1950 applied its statute to cunnilingus is irrelevant, for such subsequent developments were not "adopted" by the Tennessee court until the case before us. Indeed, the Tennessee court's failure in its 1955 *Fisher* opinion to cite *Townsend*, Maine's 1950 cunnilingus decision, although citing *Cyr*, Maine's 1938 fellatio decision, more arguably was notice that the Tennessee courts considered fellatio but not cunnilingus as within the nebulous reach of the Tennessee statute.

Moreover, I seriously question the Court's assumption that the "broad interpretation" of the phrase "crime against nature" is not unconstitutionally vague. The Court's assumption rests upon two supposed precedents: (1) this Court's dismissal for want of a substantial federal question of the appeal in *Crawford* v. *Missouri,* 409 U. S. 811 (1972), and (2) the Court's *per curiam* opinion in *Wainwright* v. *Stone,* 414 U. S. 21 (1973). That reliance is plainly misplaced.

In *Crawford,* the appellant had been convicted of coercing a mentally retarded individual to perform fellatio on appellant. The Supreme Court of Missouri did not, as the Court implies, for the first time in that case adopt a "broad" construction of its statute and apply that construction in appellant's case. Rather, the Supreme Court of Missouri first noted that the original statute, probably reaching only the common-law "crime against nature," had been legislatively amended in express terms to expand the offense to conduct committed "with the sexual organs or with the mouth," thereby "enlarg[ing] the common law definition of the crime . . . ." *State* v. *Crawford,* 478 S. W. 2d 314, 317 (Mo. 1972). Moreover, the court, observing that a "court's construction of statutory language becomes a part of the statute

'as if it had been so amended by the legislature,' " *ibid.* (citations omitted), stated that in the 60 years since that amendment, the Missouri courts had "adjudicated" that the statute embraced "bestiality, buggery, fellatio . . . and cunnilingus," *id.,* at 318, and that "[a]t least five [Missouri] cases have specifically held that the act charged [against appellant] is within the statute." *Id.,* at 319. In light of that prior judicial and legislative construction of the statutory phrase, and its specific prior application to acts identical to the appellant's, the dismissal in *Crawford* simply cannot be treated as holding that the phrase "crime against nature" is not in itself vague.

*Wainwright* v. *Stone,* as MR. JUSTICE STEWART correctly observes, also involved a statute already construed to cover the conduct there in question. Indeed, it was for that very reason that we held that the "judgment of federal courts as to the vagueness or not of a state statute must be made in the light of prior state constructions of the statute." 414 U. S., at 22. The reversal of the Court of Appeals' holding finding the statute unconstitutional was explicitly based on the fact that the state statute had previously been applied to identical conduct, which decisions "require[d] reversal" in *Wainwright* since they put the particular conduct expressly within the statute. *Id.,* at 22–23.*

---

*Admittedly, as the Court notes, a holding that prior application of a statute to identical conduct renders a statute sufficiently definite as to that conduct does not necessarily mean that in the absence of such prior application a statute must of necessity be deemed vague; but such a holding just as surely cannot be construed, as it is by the Court, as precedent deciding that in the absence of such construction, the phrase "crime against nature" is *not* unconstitutionally vague. In any event, *Wainwright* and *Crawford* present the identical situation, namely vague statutes judicially construed to narrow them.

No specter of increasing caseload can possibly justify today's summary disposition of this case. The principle that due process requires that criminal statutes give sufficient warning to enable men to conform their conduct to avoid that which is forbidden is one of the great bulwarks of our scheme of constitutional liberty. The Court's erosion today of that great principle without even plenary review reaches a dangerous level of judicial irresponsibility. I would have denied the petition for certiorari, but now that the writ has been granted would affirm the judgment of the Court of Appeals or at least set the case for oral argument.

MR. JUSTICE STEWART, with whom MR. JUSTICE MARSHALL concurs, dissenting.

I would have denied the petition for certiorari in this case, but, now that the writ has been granted, I would affirm the judgment of the Court of Appeals.

This case is not of a piece with *Wainwright* v. *Stone,* 414 U. S. 21, upon which the Court so heavily relies. There the Florida courts had repeatedly and explicitly ruled that the state law in question prohibited precisely the conduct in which the defendants were found to have engaged. Here, by contrast, the Tennessee courts had never ruled that the act that Locke was found to have committed was covered by the vague and cryptic language of the Tennessee statute, Tenn. Code Ann. § 39–707. The Court today emphasizes that a previous Tennessee court opinion had cited a decision of a Maine court construing a similar statute "broadly," but even the cited Maine decision had not construed the statute to cover the conduct in question here. And a later Tennessee decision would have supported the inference that this conduct was *not* proscribed by the Tennessee statute. *Stephens* v. *State,* 489 S. W. 2d 542 (1972).

In the *Stone* case, *supra,* the Florida statute had "been construed to forbid identifiable conduct so that 'interpretation by [the state court] puts these words in the statute as definitely as if it had been so amended by the legislature . . . .' " 414 U. S., at 23. In the present case, by contrast, the state courts had never held that the statutory language here at issue covered the respondent's conduct.

As the Court of Appeals pointed out, the respondent in this case could, and probably should, be prosecuted for aggravated assault and battery. But I think the Court of Appeals was correct in holding that the Tennessee statute under which the defendant was in fact prosecuted was unconstitutionally vague as here applied.