Richard L. BALTHAZAR, Petitioner, Appellee,

v.

SUPERIOR COURT OF the COMMONWEALTH OF MASSACHUSETTS, Respondent, Appellant.

No. 77–1159.

United States Court of Appeals, First Circuit.

Argued Sept. 8, 1977.

Decided April 4, 1978.

---

Barbara A. H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Section, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for appellant.

Susan J. Baronoff, Boston, Mass., for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, WOLLENBERG,[*] District Judge.

WOLLENBERG, District Judge.

This is an appeal from an order of the United States District Court for the District of Massachusetts issuing a writ of habeas corpus under 28 U.S.C. § 2241. The petitioner's challenge to his conviction under Mass.Gen.Laws ch. 272, § 35 for having committed the "unnatural and lascivious acts" of fellatio and oral-anal contact was sustained on the basis that the statute as applied was unconstitutionally vague. The court held further that petitioner had exhausted state remedies as required under 28 U.S.C. § 2254 on his alternative claim—that he was entitled to a new trial to raise the defense of consent created by the Supreme Judicial Court of Massachusetts in its decision affirming his conviction.[1]

Both of these issues are presented again on appeal. We affirm the District Court as to the unconstitutional vagueness of the statute as applied to petitioner's conduct. Therefore, we need not decide the second issue. Whether state remedies had been exhausted on the claim of a right to a new trial does not affect the power of the court in deciding a claim on which exhaustion has been achieved. *Miller v. Hall*, 536 F.2d 967 (1st Cir. 1976).

The pertinent facts of the case are undisputed. The principal witness herself testified that she performed an act of fellatio and put her tongue on petitioner's backside. The question we must determine is whether the statute, as applied to these acts, was unconstitutionally vague.

The void for vagueness doctrine is rooted in notions of due process. Criminal statutes must be sufficiently specific to give fair notice of what conduct is proscribed. *Rose v. Locke*, 423 U.S. 48, 49–50, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *Rabe v. Washington*, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972); *reh. denied*, 406 U.S. 911, 92 S.Ct. 1604, 31 L.Ed.2d 822; *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). A criminal statute that "leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case," *Giacco v. Pennsylvania*, 382 U.S. 399, 402–03, 86 S.Ct. 518, 520, 15 L.Ed.2d 447 (1966), is also repugnant to the Due Process Clause. The

---

[*] Of the Northern District of California, sitting by designation.

1. That issue had been raised in the state courts by a motion for a rehearing before the Supreme Judicial Court and, at the behest of the District Court, by a motion for a new trial to the Superior Court. It was thus decided that the state court had been given an opportunity to consider the claim and that the doctrine of exhaustion, based on principles of comity, did not require further application to the state courts.

vice of such a law is that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972); *Smith v. Goguen*, 415 U.S. 566, 572–73, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

The general rule is that constitutional challenges of vagueness must be based on a statute's application to the particular case, the major exception being where the exercise of First Amendment rights is involved. *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). We so limit our decision today to the question of whether Mass.Gen.Laws ch. 272, § 35, as applied to petitioner, gave him fair notice as required by due process standards that his conduct, *i.e.*, fellatio and oral-anal contact, constituted an "unnatural and lascivious act" proscribed by criminal statute.

The issue before us is not whether fair notice was given that these acts, if forced, were prohibited. The statute was limited to nonconsensual acts only in this case. *Commonwealth v. Balthazar*, 366 Mass. 298, 318 N.E.2d 478 (1974). Therefore, force was not an element of the indictment, nor was it an issue at trial.[2] Moreover, even if petitioner did have fair notice that a forced "unnatural and lascivious act" was illegal, the question as to what forced acts were within the statutory sweep would remain. If the set of all unnatural and lascivious acts is unconstitutionally vague, so will be the subset of forced acts no matter how clear the dividing line between forced and consensual acts.

In determining whether a given statute provides "a person of ordinary intelligence with fair notice that his contemplated conduct is forbidden," *United States v. Harriss*, 347 U.S. at 617, 74 S.Ct. at 812, or gives "sufficient warning that men may conduct themselves so as to avoid that which is forbidden," *Rose v. Lock*, 423 U.S. at 50, 96 S.Ct. at 244, courts traditionally have relied on the common usage of statutory language, judicial explanations of its meaning, and previous applications of the statute to the same or similar conduct. *See id.* In *Rose v. Locke* the Supreme Court considered and rejected a charge of vagueness aimed at a Tennessee statute proscribing "crimes against nature" as applied to cunnilingus. The Courts relied on previous pronouncements by the Tennessee courts that the statute would be given a broad interpretation and emphasized that there was a recognized common law meaning of the phrase "crimes against nature." The Court considered the continued use of the phrase in many jurisdictions and stated that "anyone who cared to do so could certainly determine what particular acts have been considered crimes against nature, and there can be no contention that the respondent's acts were ones never before considered as such." *Id.* This is the framework of analysis that we will use.

The District Court in the case at hand considered whether one who cared to could determine what § 35 was meant to proscribe. It concluded that the common usage of "lascivious" was "tending to arouse sexual desire," and the common usage of "unnatural acts" was "crimes against nature," which is covered by another statute, Mass.Gen.Laws ch. 272, § 34.[3] This fundamental ambiguity was not cured by judicial limitation. In *Commonwealth v. Dill*, 160 Mass. 536, 36 N.E. 472 (1894), a precursor statute to § 35 was construed to include "any mode of unnatural copulation" not coming within the definition of sodomy as usually understood. But the court never explained what "unnatural copulation" was,

---

2. No evidence was presented on the question of consent. Conflicting testimony was given on the nature and extent of force allegedly used. Petitioner was acquitted of assault with a dangerous weapon, Mass.Gen.Laws ch. 265, § 15B.

3. The District Court relied on definitions of the terms found in Webster's Third New International Dictionary (1971) and Black's Law Dictionary, 4th ed. (1968).

nor applied the term to the conduct in question. Even if it can be said with certainty that the legislature intended to retain this distinction between the narrow meaning of sodomy, to be proscribed by § 34, and all other forms of unnatural copulation, to come within the rubric of § 35, it cannot be said that the conduct in question falls squarely within one of those categories. "Unnatural copulation," like "unnatural acts," at the time of petitioner's conviction remained without a commonly accepted meaning. The leading case to follow *Dill* stated that the words "unnatural and lascivious" signify "irregular indulgence in sexual behavior, illicit sexual relations, and infamous conduct which is lustful, obscene, and in deviation of accepted customs and manners." *Jaquith v. Commonwealth*, 331 Mass. 439, 120 N.E.2d 189, 192 (1954). This definition does not cure the ambiguity and the cases in other jurisdictions cited by respondent do not clarify the internal ambiguity of the Massachusetts statutory scheme.[4] The District Court was rightly concerned that the use of constantly shifting community standards, as the test of what conduct falls within the terms of a criminal statute, places the public "at its peril to anticipate a judicial pronouncement that public standards of morality have changed." *Balthazar v. Superior Ct. of Comm. of Mass.*, 428 F.Supp. 425 (D.C.1977).

It cannot be said that references to similar statutes and judicial determinations in other jurisdictions make it fairly ascertainable that the Massachusetts statute was applicable to petitioner's conduct.[5] In *Harris v. State*, 457 P.2d 638 (Alaska 1969), the language "unnatural carnal copulation" was held to be too vague as applied to homosexual anal intercourse. *State v. Sharpe*, 1 Ohio App.2d 425, 205 N.E.2d 113 (1965), held "unnatural sex act" vague as applied to sodomy. Such statutes have also been applied to widely dissimilar forms of conduct. *See, e. g., Jellum v. Cupp*, 475 F.2d 829 (9th Cir. 1973) (holding "unnatural conduct contrary to the course of nature" vague as applied to forcing a woman to the ground and urinating on her); *Koa Gora v. Territory of Hawaii*, 152 F.2d 933 (9th Cir. 1946) (deciding that "lascivious conduct" was properly applied to laying "hands on private parts" of another). In light of the diversity of conduct that could conceivably be covered by the terms "unnatural" and "lascivious" and the fact that there are certainly acts that are less natural and more universally condemned than Balthazar's conduct (for instance a range of sado-masochistic behavior), Balthazar could reasonably believe that the statute was aimed at other acts than his.

Criminal statutes involving morals legislation often give rise to difficulties in the description of proscribed conduct. This is caused by the common practice of including subjective terminology, such as "offensive," "indecent," and "unnatural" rather than explicit descriptions of the prohibited acts. This is particularly true in statutes that involve sexual matters. The failure to specify particular conduct stems partly from the concern that some conduct might not be reached by a statute drafted too narrowly, and partly from a hesitancy to use sexually explicit words. *See, e. g., Jacquith v. Commonwealth*, 331 Mass. at 443, 120 N.E.2d at 192. Forward-looking jurisdictions have expressly rejected the antiquated notion that the penal code should not clearly define such acts. *District of Columbia v. Walters*, 319 A.2d 332 (D.C. App.1974); *see also State v. Rhinehart*, 70 Wash.2d 649, 424 P.2d 906 (1967). The Supreme Judicial Court of Massachusetts itself recognized in deciding *Balthazar* that the words of the statute standing alone no

---

**4.** The Maine case relied on by respondents, *State v. Cyr*, 135 Me. 513, 198 A. 743 (1938), is not apposite because Maine was construing a "crime against nature" statute rather than an "unnatural and lascivious acts" statute. Since Massachusetts has both statutes, another state's interpretations of one cannot clarify the meaning of the other.

**5.** The two cases ruling that an unnatural and lascivious acts statute was not vague as applied to oral sex, *Thomas v. State*, 326 So.2d 413 (Fla.1976); *State v. Lemire*, 115 N.H. 526, 345 A.2d 906 (1975), were both decided long after Balthazar did his deed.

longer had a generally understood significance. *Commonwealth v. Balthazar*, 366 Mass. 298, 318 N.E.2d 478 (1974). By excluding consensual adult conduct from the statute they implied that this conduct was no longer "in deviation of accepted customs and manners" under the *Jacquith* standard.

In light of the fact that the language of the statute at the time of petitioner's conduct had no well defined, well understood and generally accepted meaning, and that it had not been defined with sufficient particularity by judicial construction or applied to petitioner's conduct, we hold Mass.Gen. Laws ch. 272, § 35 vague as applied. We recognize that subsequent decisions narrowing the definition of conduct proscribed by § 35, *Commonwealth v. Balthazar, supra,* and applying § 35 to fellatio, *Commonwealth v. Deschamps,* 1 Mass.App. 1, 294 N.E.2d 426 (1972), render the statute sufficiently precise to survive a constitutional vagueness attack as applied today to the same conduct.

*Affirmed.*

LEVIN H. CAMPBELL, Circuit Judge (dissenting).

I strongly disagree with the court's opinion insofar as it suggests that Balthazar and the public generally lacked fair notice that *nonconsenting* fellatio and oral/anal sex acts were proscribed. In *Jacquith v. Commonwealth,* 331 Mass. 439, 120 N.E.2d 189 (1954), the statute was judicially construed to forbid "illicit sexual relations, and infamous conduct which is lustful, obscene, and in deviation of accepted customs and manners." Surely nonconsenting fellatio and oral/anal sex acts come within that definition if any conduct does. Indeed, one can venture to suggest that any sane person would know that such nonconsensual acts were forbidden, just as he would known that highway robbery, piracy and murder are forbidden. Since the Massachusetts Supreme Judicial Court has limited the statute to nonconsensual acts, and since, so limited, it is certainly constitutional as the court concedes, *see Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975), I find much of the court's rationale puzzling.

The difficulty here, as I see it, is not that defendant would not know that to force a person to engage in such unnatural sex acts was criminal. Rather the difficulty is that his counsel and the judge were not in a position when the case was tried to know that non-consent was an essential element of the offense, the Supreme Judicial Court not yet having spoken. Accordingly, the judge did not instruct the jury to this effect, and defense counsel did not, we are told, defend explicitly on the ground of consent. It is thus possible that the jury—which acquitted defendant of assault—convicted him under the unnatural acts statute without finding that he forced the victim. I realize that the Supreme Judicial Court considered and rejected this possibility, but it seems to me that the record does not warrant its confidence in this regard. It is fundamental that an accused is entitled to know in advance the elements of the offense so that he can prepare a defense, and that he go to the jury on proper instructions. I therefore believe that fundamental fairness requires that defendant be afforded a new trial. But I see no need to vacate the conviction, and bar reprosecuting as the court does in affirming the district court.