UNITED STATES, Appellee,

v.

Reginald B. SCOBY, Private, U. S. Army, Appellant.

No. 30,747.

CM 432066.

U. S. Court of Military Appeals.

June 26, 1978.

*David F. Addlestone,* Esquire, and *Susan H. Hewman,* Esquire, filed a brief *amicus curiae* on behalf of the National Military Discharge Review Project.

*Captain Clement L. Hyland* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr.,* and *Captain Gary F. Thorne.*

Opinion of the Court

COOK, Judge:

In material part, Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925, provides that any person subject to the Code "who engages in unnatural carnal copulation with another person of the same or opposite sex" commits sodomy. The accused was convicted of a violation of the article. Three grounds for dismissal of the charge are implicit in his appellate contentions. They are:

(1) That Article 125 is unconstitutionally vague;

(2) That the sexual act performed by him is conduct protected by a right of privacy assured by the Constitution; and

(3) That if the article is constitutionally valid, the act of consensual fellatio attributed to him is not within its operative scope.

*The Vagueness Claim*

A statute that fails to give fair notice of punishable conduct violates constitutional due process. *United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). The accused contends that the definition of sodomy as "unnatural carnal copulation" is so vague and uncertain that "men of common intelligence must necessarily guess at its meaning." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Decisions by appellate courts of Alaska, Ohio, and Florida support the contention. In *Harris v. State,* 457 P.2d 638 (1969), the Alaska Su-

*Captain Paul C. Hemmer* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey* and *Captain John R. Osgood.*

preme Court held that a part of a statute which proscribed the "crime against nature" was unconstitutionally vague. *In dictum*, the court noted that another part of the statute which prohibited "unnatural carnal copulation by means of the mouth, or otherwise" was "plainly" subject to attack for "the same infirmity." *Id.* at 647, n. 31. In *State v. Sharpe*, 1 Ohio App.2d 425, 205 N.E.2d 113 (1965), the Ohio Court of Appeals held to be impermissibly vague a statute that forbade any "unnatural sexual act." In *Franklin v. State*, 257 So.2d 21 (1971), the Florida Supreme Court struck down as violative of the constitutional requirement of specificity of definition a statute that forbade the "abominable and detestable crime against nature," but it affirmed the defendant's conviction, as supported by allegation and proof, of a statute that prohibited any "unnatural and lascivious act with another." Other courts, however, have held that statutes prohibiting "unnatural" sexual conduct are sufficiently precise in meaning to satisfy the constitutional requirement. The Supreme Court of New Jersey has remarked that a "majority of jurisdictions have ruled" in favor of constitutional specificity. *State v. Lair*, 62 N.J. 388, 301 A.2d 748, 752 (1973). In upholding a Tennessee statute prohibiting "crimes against nature" as not violative of the vagueness doctrine, the United States Supreme Court said:

> All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.

> Viewed against this standard, the phrase "crimes against nature" is no more vague than many other terms used to describe criminal offenses at common law and now codified in state and federal penal codes. The phrase has been in use among English-speaking people for many centuries, see 4 W. Blackstone, Commentaries 216, and a substantial number of jurisdictions in this country continue to utilize it. See Note, The Crimes Against Nature, 16 J.Pub.L. 159, 162 n.19 (1967). Anyone who cared to do so could certainly determine what particular acts have

been considered crimes against nature, and there can be no contention that the respondent's acts were ones never before considered as such. [*Rose v. Locke*, 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975).]

Article 125 proscribes modes of copulation that deviate from those the general military community regards as "natural" or normal. Appellate defense counsel refer us to respectable medical and lay opinion to the effect that no mode of sexual activity is unnatural or deviant. Here, we are concerned only with the definition of the prohibited conduct. More specifically, would a person of ordinary intelligence understand from a reading of Article 125 that deviant ways of carnal copulation are interdicted?

Constitutionally, the ordinary person is required to take account of community standards in sexual matters, even when engaged in the exercise of a constitutional right. Thus, although exercising the First Amendment rights to free speech and press, an individual is not protected against the dissemination of obscene matter. He must consider whether the matter he proposes to distribute appeals to "prurient interest," as determined by "contemporary community standards." *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

Through law, regulations, and interpretive material, the military community is made aware that certain forms of sexual intercourse are deviations from its standards. *Matlovich v. Secretary of the Air Force*, U.S.D.C. D.C. (July 16, 1976), 45 U.S. Law Week 2074 (Aug. 17, 1976). *See also Parker v. Levy*, 417 U.S. 733, 753–4, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The Ohio Court of Appeals has observed that "[t]he sociological and biological range of sex acts is almost infinite." *State v. Sharpe, supra* 205 N.E.2d at 114. Imaginably, some esoteric acts may not easily be identifiable as within or without the scope of Article 125, but the United States Supreme Court has pointed out that where there is "a substantial range of conduct" to which an article of the Uniform Code clearly applies, the arti-

cle's definition of the offense is not fatally deficient, even though an area of uncertainty may remain. *Parker v. Levy, supra*, 417 U.S. at 754–58, 94 S.Ct. 2547. Rejecting an argument in *Rose v. Locke, supra*, as to the uncertainty of aberrant sexual acts that might be encompassed within the terms of the statute, which was substantially similar to that advanced by the accused here, the United States Supreme Court said:

> Respondent argued that the vice in the Tennessee statute derives from the fact that jurisdictions differ as to whether "crime against nature" is to be narrowly applied to only those acts constituting the common-law offense of sodomy, or is to be broadly interpreted to encompass additional forms of sexual aberration. We do not understand him to contend that the broad interpretation is itself impermissibly vague; nor do we think he could successfully do so. We have twice before upheld statutes against similar challenges. In *State v. Crawford*, 478 S.W.2d 314 (1972), the Supreme Court of Missouri rejected a claim that its crime-against-nature statute was so devoid of definition as to be unconstitutional, pointing out that its provision was derived from early English law and broadly embraced sodomy, bestiality, buggery, fellatio, and cunnilingus within its terms. We dismissed the appeal from this judgment as failing to present a substantial federal question. *Crawford v. Missouri*, 409 U.S. 811, 93 S.Ct. 176, 34 L.Ed.2d 66 (1972); see *Hicks v. Miranda*, 422 U.S. 332, 343–345, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). And in *Wainwright v. Stone*, [414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973)] we held that a Florida statute proscribing "the abominable and detestable crime against nature" was not unconstitutionally vague, despite the fact that the State Supreme Court had recently changed its mind about the statute's permissible scope. [423 U.S. at 50–51, 96 S.Ct. at 244.]

*See also Enslin v. Bean, cert. denied*, 436 U.S. 912, 98 S.Ct. 2252, 56 L.Ed.2d 413 (1978).

■ We conclude that the conduct prohibited by Article 125 is sufficiently defined as to be understood by a person of ordinary intelligence in the military community and is, therefore, not unconstitutionally vague.

## The Right to Privacy

In an oft quoted dissent, Mr. Justice Brandeis said that "the right to be let alone [by the Government is] the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928). Justice Brandeis, however, readily acknowledged that the right to be free from Government intrusion is not absolute. Paradoxically, as society has become more complex, and people have called upon all governments, Federal, state and local, to do more for more persons, increasing resistance has been evident to Government supervision over sexual conduct. In this case, and in companion cases, the briefs of counsel list an imposing array of cases, commentary and professional opinion expounding the right of individuals to engage in sexual activity of their own choosing, without any sort of regulation by the Government.

By its terms, Article 125 prohibits every kind of unnatural carnal intercourse, whether accomplished by force or fraud, or with consent. Similarly, the article does not distinguish between an act committed in the privacy of one's home, with no person present other than the sexual partner, and the same act committed in a public place in front of a group of strangers, who fully apprehend the nature of the act. The accused does not deny that sexual activity upon the person of another effected by force, fraud or without consent is not protected by the constitutional right of privacy. *See Rose v. Locke, supra*. Further, he does not deny, and the authorities upon which he relies affirm, that the Government can properly forbid sexual acts with a minor. The essence of his constitutional challenge to Article 125, therefore, is that there is no "compelling [governmental] interest" to justify intrusion upon the funda-

mental constitutional right of adults to consensual sexual activity. Stated otherwise, his contention is that, as applied to an act of consensual copulation between adults, the article violates the right to privacy that has been extrapolated from various provisions of the Bill of Rights, including the "penumbral" rights reserved to the people in the Ninth Amendment.

 Without attempting to review all recent cases and literature on the subject, it is apparent that even in jurisdictions which now recognize the right of consenting adults to engage in sexual activity free from Government imposed limitations, the right, whether constitutional or statutory, extends no further than to conduct committed in private. *State v. J. O.*, 69 N.J. 574, 355 A.2d 195 (1976); *State v. Elliott*, 89 N.M. 305, 551 P.2d 1352 (1976). Suffice it to note here our conviction that regardless of the scope of the constitutional right to engage in sexual conduct, Article 125 does not violate that right when the sexual act it prohibits is performed in a public place.[1] The accused implies that his act was not committed in a public place.

The act of which the accused stands convicted was accomplished in what accused describes as a "semi-private living area" encompassing "two four-man bays, divided by a partial cement partition." The defense concedes that four to seven others were "present in their bunks," but it contends that all were asleep. However, there is testimony from which it could reasonably be inferred that others in the bay were in bed but not asleep; two witnesses testified that they actually observed the act.

Although dealing only with construction of a state statute, the opinion of the Supreme Court of New Jersey in *State v. J. O.*, 355 A.2d at 196, indicates that an act of sodomy in a parked car, on a public street, is not public unless the circumstances are such that "the defendants could reasonably be deemed to have intended, or known, that their conduct was likely to be seen by the public." Conversely, in *Franklin v. State, supra*, the Supreme Court of Florida had no difficulty in concluding that an act of consensual sodomy was committed in a public place, when it occurred at about 2:50 a. m. in a "fill area," apparently near the waterfront of the city of St. Petersburg, with no person being present other than the police officer who had observed the defendants arrive at the "fill area" in separate cars and then "get together in one of the cars." He approached the car and observed the defendants in the act.

 A similar division of judicial opinion apparently exists as to whether accomplishment of a prohibited sexual act in a private home or apartment, in the presence of one or more persons other than those engaged in the act, is constitutionally protected. In *Harris v. State, supra*, the act was performed in an apartment in the presence of other persons. The act had been compelled, but the Alaska Supreme Court observed that, had it been "private, consensual conduct with no visible impact upon other persons, at least some of [the members of the court] . . . might perceive a right to privacy." 457 P.2d at 648. Oppositely, in *Lovisi v. Slayton*, 363 F.Supp. 620, 626 (E.D. Va., 1973), *aff'd*, 539 F.2d 349 (4th Cir. 1976), *cert. denied sub nom. Lovisi v. Zahradnick*, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976), the court held that "existence of seclusion . . . is a necessary prerequisite" to exclude a consensual sexual act from Government regulation. *See also United States v. Berry*, 6 U.S.C.M.A. 609, 614, 20 C.M.R. 325, 330 (1956). For purposes of this case, we need go no further than to decide, as we do, that the accused's act was performed in a public place. However, to dispose properly of other cases in which we granted review to await decision in this case, we must decide whether Article 125 can constitutionally be applied to sexual acts performed in private

---

1. As required by *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), the circumstances of the commission of the offense must establish a sufficient connection between it and the military establishment to justify the exercise of court-martial jurisdiction. *United States v. Hedlund*, 2 M.J. 11 (C.M.A.1976).

quarters, with or without the presence of other persons.

In *State v. Sharpe, supra,* the Ohio Court of Appeals remarked that the individual's personal preference or natural disposition in satisfaction of sexual desire does not measure the Government's authority to prohibit certain modes of sexual activity. "The very purpose of law," said the court, "is to establish a standard of conduct conducive to the needs and welfare of the community." 205 N.E.2d at 115. The military community is different from the civilian community. The amalgam of relationships between the Government and the service person is such that "within the military community there is simply not the same autonomy [on the part of the service person] as there is in the larger civilian community." *Parker v. Levy, supra* 417 U.S. at 751, 94 S.Ct. at 2559. Nevertheless, appellate defense counsel contend that the military cannot demonstrate a compelling interest to justify more stringent regulation of deviant sexual behavior in the military than prevails in the civilian community.

The background material on the adoption of the UCMJ indicates Congress made no findings as to the possible harmful consequences of privately performed sexual acts upon the military community. *Cf. Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). The absence of such findings does not mean that justification of difference in treatment between civilians and military persons is not possible. The view we take of the matter obviates consideration of whether certain kinds of sexual conduct, like certain kinds of speech, may be protected in the civilian population, while subject to regulation in the military. *United States v. Priest,* 21 U.S.C.M.A. 564, 570, 45 C.M.R. 338, 344 (1972), cited with approval in *Parker v. Levy, supra* 417 U.S. at 758, 94 S.Ct. 2547.

With one exception, the weight of recent judicial opinion is that deviant sexual activity in private between consenting adults is not constitutionally protected as part of the right of privacy. *Doe v. Commonwealth Attorney for the City of Richmond,* 403 F.Supp. 1199 (E.D.Va.1975), *aff'd* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976); *Lovisi v. Slayton, supra; Enslin v. Bean, supra.* The exception is sexual activity between a married couple in the privacy of their own abode. *State v. Elliott, supra. See also State v. Bateman,* 113 Ariz. 107, 547 P.2d 6 (1976). Appellate defense counsel maintain that there is no justification for differentiating between married and unmarried persons engaged in the same sexual act, in similar circumstances of seclusion, and any such differentiation constitutes a denial of equal protection of the law. That argument was rejected in *State v. Lair, supra.* Assuming, however, that a classification contingent upon a marital status is suspect,[2] the flaw in the argument is that it does not take account of the fact that the guarantee of equal protection does not create substantive rights. *New York State Association for Retarded Children, Inc. v. Rockefeller,* 357 F.Supp. 752, 762 (E.D.N.Y.1973); *United States v. Malinowski,* 347 F.Supp. 347 (E.D.Pa.1972), *aff'd,* 472 F.2d 850 (3rd Cir. 1973), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). Article 125 does not distinguish between married and unmarried partners in sexual activity. If differentiation on the basis of marital relationship is required, it is only because of the constitutional limitation that may exist in regard to the right of privacy. In *Lovisi,* the Court of Appeals for the Fourth Circuit construed the summary affirmance by the United States Supreme Court of *Doe v. Commonwealth Attorney, supra,* as follows:

> In upholding the statute as applied to homosexual acts between two consenting adults in private places, the Supreme Court necessarily confined the constitutionally protected right of privacy to heterosexual conduct, probably even that only within the marital relationship. [539 F.2d at 352.]

2. *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Indiana High School Athletic Association v. Raike,* 329 N.E.2d 66 (Ind.App., 1975).

Here, it suffices that we record our agreement with the general rule, and leave to a case directly involving a married couple consideration of whether the exception exists and can properly be applied to the military community. We hold that Article 125, facially and as applied, does not trench upon the constitutional right of privacy by forbidding unnatural or deviant sexual intercourse between adults in private. There is no claim, and no evidence, that the article has been intentionally and discriminatorily applied to unmarried persons as distinguished from married individuals. *See United States v. Malinowski, supra; Delia v. Court of Common Pleas,* 418 F.2d 205 (6th Cir. 1969), *cert. denied,* 396 U.S. 886, 90 S.Ct. 174, 24 L.Ed.2d 161 (1969).

*The Scope of Article 125*

Turning to the conduct forbidden by Article 125, the question is whether fellatio is included within its terms. Before the Uniform Code, Army and Air Force judicial opinion was to the effect that the military offense included sexual intercourse *per os.*[3] Further, the 1949 Manual for the Army and the Air Force expressly carried forward the earlier official construction of the statutory scope of the offense by noting that sodomy included "taking into . . . [the] mouth . . . the sexual organ of any other person." Manual for Courts-Martial, U.S. Army, 1949, paragraph 180*j*; Manual for Courts-Martial, U.S. Air Force,

1949, paragraph 180*j*. We have no doubt that this construction was intended by the draftsmen of the Uniform Code and Congress to be continued in regard to Article 125. *See Fribourg Nav. Co. v. Commissioner,* 383 U.S. 272, 283, 86 S.Ct. 862, 15 L.Ed.2d 751 (1966); *cf. United States v. Duke,* 16 U.S.C.M.A. 460, 37 C.M.R. 80 (1966). Accordingly, we conclude that fellatio is properly chargeable as a violation of the article.

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY concurs in the result.

FLETCHER, Chief Judge (concurring in the result):

I concur in the result announced in Judge Cook's opinion in the following particulars:

1. That Article 125, Uniform Code of Military Justice, is not vague or uncertain.

2. That the acts charged herein between consenting persons of the same sex in a public place fall within the purview of Article 125, UCMJ.

3. That fellatio between persons of the same sex is within the scope of Article 125, UCMJ.

I disassociate myself from any overstatements made in the principal opinion which exceed the specific facts of this case.

---

3. *United States v. Hulme,* 2 B.R. 19 (1931); *United States v. White,* 1 B.R. [ETO] 1 (1942); *United States v. Manuel,* 59 B.R. 197 (1946); *United States v. Gomez,* 3 C.M.R. (AF) 615, 620 (1950); *United States v. Grant,* 3 C.M.R. (AF) 248 (1950).