David G. MONHOLLEN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 95–CA–003309–MR.

Court of Appeals of Kentucky.

April 18, 1997.

Rehearing Denied June 20, 1997.

J. Campbell Cantrill, III, Cantrill and
Simms, Georgetown, for Appellant.

A.B. Chandler III, Attorney General, Car-
ol C. Ullerich, Assistant Attorney General,
Frankfort, for Appellee.

Before EMBERTON, HUDDLESTON
and SCHRODER, JJ.

*OPINION*

HUDDLESTON, Judge.

After entering a Ky.R.Crim.Proc. (RCr)
8.09 conditional plea of guilty, David G. Mon-
hollen has appealed from the Scott Circuit
Court judgment that convicted him of first-
degree stalking under Ky.Rev.Stat. (KRS)
508.140 and sentenced him to one year in
prison. On appeal, Monhollen insists that
the stalking statute is unconstitutionally
vague.

In *Kolender v. Lawson,* 461 U.S. 352, 357,
103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909
(1983), the United States Supreme Court ex-
plained that:

> [T]he void-for-vagueness doctrine requires
> that a penal statute define the criminal
> offense with sufficient definiteness that or-
> dinary people can understand what con-
> duct is prohibited and in a manner that
> does not encourage arbitrary and discrimi-
> natory enforcement.

*See also Village of Hoffman Estates v. Flip-
side, Hoffman Estates, Inc.,* 455 U.S. 489,
102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The
Court has further said, however, that "this
prohibition against excessive vagueness does
not invalidate every statute which a review-
ing court believes could have been drafted
with greater precision." *Rose v. Locke,* 423
U.S. 48, 49, 96 S.Ct. 243, 244, 46 L.Ed.2d 185,
188 (1975). *See also Caretenders, Inc. v.
Commonwealth,* Ky., 821 S.W.2d 83, 88
(1991) (recognizing that "[t]o describe every
possible situation in which [a statute might
apply] would be pointless and would make
the statute unwieldy") and *Hendricks v.
Commonwealth,* Ky., 865 S.W.2d 332, 337
(1993) (explaining that "[t]he mere fact that
one can conceive some impermissible applica-
tion of a statute is not sufficient to render it
susceptible to an overbreadth challenge").

The stalking statute, KRS 508.140, pro-
vides:

(1) A person is guilty of stalking in the
first degree,

  (a) When he intentionally:

    1. Stalks another person; and

    2. Makes an explicit or implicit
    threat with the intent to place that
    person in reasonable fear of:

    a. Sexual contact as defined in KRS
    510.010;

    b. Serious physical injury; or

    c. Death; and

  (b) 1. A protective order or other judi-
    cial order as provided for in KRS
    Chapter 403 has been issued by the
    court to protect the same victim or

victims and the defendant has been served with the summons or order or has been given actual notice; or

2. A criminal complaint is currently pending with a court, law enforcement agency, or prosecutor by the same victim or victims and the defendant has been served with a summons or warrant or has been given actual notice; or

3. The defendant has been convicted of or pled guilty within the previous five (5) years to a felony or to a Class A misdemeanor, other than a violation of KRS 508.150, against the same victim or victims; or

4. The act or acts were committed while the defendant had a deadly weapon on or about his person.

(2) Stalking in the first degree is a Class D felony.

The definitions to be used in KRS 508.140 are set forth in KRS 508.130. According to KRS 508.130(1)(a), "[t]o 'stalk' means to engage in an intentional course of conduct:"

1. Directed at a specific person or persons;

2. Which seriously alarms, annoys, intimidates, or harasses the person or persons; and

3. Which serves no legitimate purpose.

KRS 508.130(1)(b) further explains that "[t]he course of conduct shall be that which would cause a reasonable person to suffer substantial mental distress." "Course of conduct" is defined in KRS 508.130(2) as "a pattern of conduct composed of two (2) or more acts, evidencing a continuity of purpose." KRS 508.130(2) specifically excludes "[c]onstitutionally-protected activity" from "the meaning of 'course of conduct'" and provides that "[i]f the defendant claims that he was engaged in constitutionally protected activity, the court shall determine the validity of that claim as a matter of law and, if found valid, shall exclude that activity from evidence." Because there is no statutory definition of "legitimate purpose" or the phrase "seriously alarms, annoys, intimidates or harasses," Monhollen argues that the statute is unconstitutionally vague. We disagree. *See*

*generally* Marjorie A. Caner, Annotation, *Validity, Construction, and Application of Stalking Statutes*, 29 A.L.R.5th 487 (1995).

When read in conjunction with KRS 508.130, KRS 508.140 defines the offense of stalking with sufficient definiteness that ordinary people can determine what conduct is prohibited. In fact, we have no doubt that any ordinary person "on the street" would determine that Monhollen's conduct fell within the well-defined ambits of the stalking statute. *Hardin v. Commonwealth*, Ky., 573 S.W.2d 657, 660 (1978). As the Commonwealth points out, during 1993 and 1994, after Monhollen and his wife separated, Monhollen allegedly harassed and threatened his wife on numerous occasions by:

[B]reaking a plate glass door, driving through the yard and upending household furniture . . .; traveling to [her] home with a gun . . .; throwing a cordless telephone . . .; threatening [her] at work; arriving at a birthday party without an invitation, grabbing [her] arm and forcing her inside his car, grabbing [her] hair, injuring her hand, . . . biting [her] shoulder and back; constantly calling [her] home because she refused his invitation to attend a concert; firing a gun during a phone conversation . . .; blocking [her] car so she could not escape from him at Dairy Queen, and when she finally got away[, he] laid in wait for her at the entrance to her subdivision and then constantly called her home that evening; confronting [her] on a sidewalk; jerking [her] arm at a laundromat; calling [her] names; repeatedly calling [her] workplace with invitations; and, waiting for [her] and confronting her in the Wal-Mart parking lot where he hit her so hard she lost consciousness.

A domestic violence order was entered on June 1, 1994, and when Monhollen continued the course of conduct, he was charged with stalking.

Under any definition of the phrase, there is no "legitimate purpose" for Monhollen's conduct. Furthermore, KRS 508.130(2) specifically excludes constitutionally-protected activity from the definition of a "course of conduct" that would violate KRS 508.140. Similarly, since KRS 508.130(1)(b) requires

the course of conduct to be such that "would cause a reasonable person to suffer substantial mental distress," the meaning of "seriously alarms, annoys, intimidates or harasses" is not determined by the victim's subjective feelings. All of the terms to which Monhollen objects are commonly understood by ordinary people. Given the KRS 508.130 restrictions placed upon the definition of stalking, use of these common terms, without further definition, does not render KRS 508.140 unconstitutionally vague.

The judgment is affirmed.

All concur.