# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 24, 2001 Session

## STATE OF TENNESSEE v. MELVIN E. BEARD

### Direct Appeal from the Criminal Court for Williamson County
### No. I-1098-345      Timothy L. Easter, Judge

---

### No. M2000-02207-CCA-R3-CD - Filed January 31, 2002

---

After being indicted for aggravated perjury, the defendant, Melvin E. Beard, filed a motion for a bill of particulars. In response, the state filed two bills of particulars, one on January 22, 1999 and one on August 5, 1999. At the conclusion of a jury trial, which was held on March 8-9, 2000, the jury convicted the defendant of aggravated perjury. The trial court sentenced the defendant as a Range II multiple offender to serve five years in confinement. The defendant now brings this appeal challenging his conviction and sentence on several grounds. Following a thorough review, we find none of the issues raised warrant relief and we therefore affirm the conviction and sentence.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Eric L. Davis, Franklin, Tennessee, for appellant, Melvin E. Beard.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Ron Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for appellee, State of Tennessee.

### OPINION

### Factual Background

On May 19, 1997, following a conviction of driving after being declared a motor vehicle habitual offender, the defendant was ordered to serve a four-year term in the Community Corrections program. On May 5, 1998, Tracie Johnson, who was serving as a confidential informant for the drug task force of the Williamson County Sheriff's Department, contacted the defendant, one of her drug suppliers, and arranged to meet him in order to buy some crack cocaine from him. Ms. Johnson, who had arranged to meet the defendant at his trailer, saw the defendant in a parking lot before their scheduled meeting time and purchased the crack cocaine from him at that time. The police monitored this transaction via a recording device that Ms. Johnson had agreed to wear. After the

transaction was completed, Ms. Johnson met the police and gave the cocaine to them. Subsequent testing determined the weight of the cocaine to be 0.2 grams. Shortly thereafter, Ms. Johnson and Mr. Bennett, Ms. Johnson's husband who had also accompanied her when she made the earlier cocaine purchase, drove to the defendant's trailer to make a second cocaine purchase. Mr. Bennett purchased the cocaine this time while Ms. Johnson waited outside the defendant's trailer. Mr. Bennett and Ms. Johnson then met the police and gave them the cocaine from this transaction. The police later determined this amount to be 0.1 grams.

On May 7, 1998, Ms. Johnson and Mr. Bennett went to the defendant's trailer in order to make another cocaine purchase. The police also monitored this transaction through the wire transmitter that Ms. Johnson had agreed to wear. Once Ms. Johnson and Mr. Bennett arrived, Ms. Johnson showed the defendant her money, indicating that she wished to make a cocaine purchase. The defendant directed Ms. Johnson to a gentleman known to her as "Painter." Painter allotted a certain amount of crack cocaine for Ms. Johnson; asked the defendant if that amount was appropriate,[1] to which the defendant nodded his head affirmatively; and then gave Ms. Johnson the cocaine.

On September 28, 1998, a court held a hearing to investigate the defendant's alleged Community Corrections program violation, as he had tested positive for cocaine use. At the hearing, the prosecutor asked the defendant, "While you've been on this Community Corrections program, have you been involved in any way in the sale of crack cocaine?" The defendant responded, "Not that I know of."[2] The defendant gave this testimony while under oath. The trial court revoked the defendant's participation in the Community Corrections program, and the defendant was tried and convicted of aggravated perjury. He now brings this appeal challenging his conviction on eight grounds, alleging (1) that the evidence admitted at trial was insufficient to support his conviction; (2) that the trial court erred by allowing a police officer to offer hearsay by testifying about his conversation with Ms. Johnson; (3) that the trial court erred by giving the jury an unconstitutionally vague definition of material; (4) that the trial court erred by refusing to give one of the defendant's proposed jury instructions; (5) that the trial court erred by refusing to instruct the jury regarding ignorance of mistake of fact; (6) that the trial court erred by refusing to grant the defendant's motion for judgment of acquittal; (7) that the trial court erred when sentencing the defendant; and (8) that the trial court erred by failing to arrest judgement, as the presentment failed to charge an offense. After reviewing these allegations, we find that none of them merit relief.

## Sufficiency

The defendant challenges the sufficiency of the evidence presented at trial to support his conviction. When a defendant challenges the sufficiency of the evidence, this Court is obliged to

---

[1]     Painter asked the defendant, "What do you think, Melvin?" Ms. Johnson testified at trial that she believed that this question evidenced that the defendant was the actual dealer and that he was allowing Painter to handle the drug transaction for him.

[2]     The state filed a bill of particulars on January 22, 1999 and another on August 5, 1999 stating that the above statement, made in the context of a Community Corrections violation hearing held in a Williamson County court, was the allegedly perjured statement.

review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

The defendant was convicted of aggravated perjury. Tennessee Code Annotated section 39-16-703 sets forth the elements of this offense: (a) A person commits an offense who, with intent to deceive: (1) Commits perjury as defined in § 39-16-702; (2) The false statement is made during or in connection with an official proceeding; and (3) The false statement is material. Tenn. Code Ann. § 39-16-703. Section 39-16-702 defines perjury as follows: (a) A person commits an offense who, with intent to deceive: (1) Makes a false statement, under oath; (2) Makes a statement, under oath, that confirms the truth of a false statement previously made and the statement is required or authorized by law to be made under oath; . . . . Tenn. Code Ann. § 39-16-702.

The defendant argues that the state failed to prove, beyond a reasonable doubt, that the defendant made a false statement under oath, that the defendant made the statement with the intent to deceive, or that the defendant's statement was material. However, after reviewing the record, we find that a rational trier of fact could have found the defendant guilty of every element of aggravated perjury beyond a reasonable doubt.

The defendant claims that the state failed to meet its burden of proving that his statement was false because his response was merely a vague, either true or half-true, response to the state's overly broad question. The defendant claims that the state purposefully asked the defendant an overly broad question, rather than a series of specific questions about the defendant's various drug transactions, thereby hoping to illicit a superficially false response. However, we find that the question that the state posed to the defendant, namely, "While you've been on this Community Corrections program, have you been involved in any way in the sale of crack cocaine?," was sufficiently specific to convey to the defendant what types of conduct the question encompassed. Moreover, the defendant's response, "Not that I know of," was neither true nor half-true, but literally false. C.f. State v. Forbes, 918 S.W.2d 431 (Tenn. Crim. App.1995) (holding that a "half truth," i.e. a literally true statement omitting the truth of the matter, was "legally [in]sufficient to support a conviction for making a false representation of fact"). The police monitored three separate crack cocaine sales by the defendant during the period in which the defendant was placed in the Community Corrections program, indicating that the defendant had indeed been involved in the sale of crack cocaine while in the

Community Corrections program. While the defendant argues that he did not make those drug sales, the jury's verdict of guilt accredits the state's witnesses, who testified that the defendant did indeed sell cocaine on these three occasions. Moreover, there is no evidence in the record to support a finding that his statement was literally true. Therefore, a rational jury could have found that the defendant's response to the state's question was a literally false statement.

The defendant also avers that his statement was not made with an intent to deceive, arguing that the state erroneously failed to refresh the defendant's recollection. However, as noted above, the defendant did indeed sell crack cocaine while he was in the Community Corrections program, and the record indicates he understood the question posed to him as to whether he had been involved in cocaine transactions during this period. Therefore, a rational jury could have found that the defendant made the false statement at his hearing because he intended to deceive the court and thereby procure a less harsh punishment for his Community Corrections violation.

Finally, the defendant argues that the evidence was not sufficient to prove that the statement was material, as defined by Tennessee Code Annotated section 39-16-701(1). Section 39-16-701(1) defines the test for materiality as whether "the statement, irrespective of its admissibility under the rules of evidence, could have affected the course or outcome of the official proceeding." Tenn. Code Ann. § 39-16-701(1). The defendant argues that the evidence presented to the jury was insufficient to allow them to determine whether the defendant's statement "could have affected the outcome of the" Community Corrections violation hearing because the jury was not informed of the nature of the defendant's alleged violation. If the violation had involved failure to report to a supervisor, moving without permission, or failing to perform public service hours, the defendant argues, the jury could have found that the defendant's statement was immaterial. The defendant argues that without any information regarding the nature of the defendant's violation, it was impossible for the jury to make any determination of materiality.

The state counters that the jury was informed that a trial court has several options when sentencing a defendant who has violated the conditions of his Community Corrections program. After finding that a defendant has violated the conditions of this program, the court may revoke his eligibility to participate in the program and require him to serve his entire sentence, require him to serve a portion of his sentence and then return him to the program, or return him to the program at Level One. The state argues that because the trial court had several options as to how to sentence the defendant for his Community Corrections program violation, a rational jury could have found that the defendant's statement disclaiming any participation in illegal drug sales could have affected the outcome of his violation hearing because the trial court, if properly apprised that the defendant was selling drugs, could have imposed a different sentence.

We agree that based on the information presented at trial, a rational jury could have found that the defendant's statement was material. Although the Community Corrections revocation proceeding was based on illegal cocaine use, as opposed to the sale of cocaine, the jury was aware that given the myriad of options available to a trial judge when revoking Community Corrections, lying about participation in cocaine transactions could effect the ultimate disposition of the defendant's revoked Community Corrections sentence.

## Constitutionality of the Materiality Definition

The defendant also asserts that the definition of material as an element of perjury, which is set forth in Tennessee Code Annotated section 39-16-701(1), is unconstitutionally vague. The Code defines the test for the materiality element of perjury as whether "the statement, irrespective of its admissibility under the rules of evidence, could have affected the course or outcome of the official proceeding." Tenn. Code Ann. § 39-16-701(1). The defendant asserts that this definition, which the trial court included in its charge to the jury, is unconstitutionally vague because it includes the language "could have affected," which does not clearly define its prohibitions. The defendant asserts that the inclusion of this language "permit[s] a jury to wildly speculate as to the potential effect of any false statement []regardless of its actual materiality."

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Grayned v. City of Rockford, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). The fair warning requirement embodied in the due process clause prohibits the states from holding an individual criminally responsible for conduct that he could not have reasonably understood to be proscribed. United States v. Harriss, 347 U.S. 612, 74 S .Ct. 808, 98 L. Ed. 989 (1954). Due process requires that the law give sufficient warning so that people may avoid conduct that is forbidden. Rose v. Locke, 423 U.S. 48, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975). The words of a statute are to be taken in their natural and ordinary sense without a forced construction to limit or extend their meaning. Ellenburg v. State, 384 S.W.2d 29, 30 (Tenn. 1964). Initially, trial courts are charged with upholding the constitutionality of statutes where possible. Dykes v. Hamilton County, 191 S.W.2d 155, 159 (Tenn. 1945); State v. Joyner, 759 S.W.2d 422, 425 (Tenn. Crim. App. 1987). A party challenging the constitutionality of a statute has the burden of rebutting the presumption that the statute is constitutional. Helms v. Tennessee Dep't of Safety, 987 S.W.2d 545, 549 (Tenn. 1999); State v. Blanton, 975 S.W.2d 269, 286 (Tenn. 1998). The constitutional test for vagueness is whether a statute's prohibitions are not clearly defined and are thus susceptible to different interpretations as to what conduct the statute actually proscribes. State v. Forbes, 918 S.W.2d 431, 447-48 (Tenn. Crim. App. 1995); see also Grayned, 408 U.S. at 108; Baggett v. Bullitt, 377 U.S. 360, 367, 84 S. Ct. 1316, 12 L. Ed. 2d 377 (1964).

A party challenging the constitutionality of a statute may challenge the statute as unconstitutional on its face or unconstitutional as applied to that party's case. See, e.g., State v. Rhonda Leigh Burkhart, No. 01C01-9804-CC-00174, 1999 WL 1096051, at *3 (Tenn. Crim. App. at Nashville, December 6, 1999), perm. to appeal granted, (Tenn. 2000). To bring a facial challenge, the challenging party must prove that no set of circumstances exist under which the act would be valid. Davis-Kidd Booksellers, Inc. v. McWherter, 866 S.W.2d 520,525 (Tenn. 1993) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). This the defendant has not done.

When considering the constitutionality of the statute as applied to the defendant, the defendant argues that the jury could not have found that the materiality prong of aggravated perjury was supported by evidence introduced at trial because the state did not introduce evidence concerning the nature of the defendant's Community Corrections violation, namely whether the defendant tested positive for cocaine use. Accordingly, the defendant argues that the jury could not have "concluded that the defendant's alleged false statement 'could have' affected the trial court's decision as to whether or not the defendant tested positive on July 21, 1998, as it was not informed

of the nature of the defendant's alleged violation." However, the jury was charged not with determining whether the defendant's statement could have affected the verdict, but whether his statement "would have affected the course or outcome of the official proceeding." Tenn. Code Ann. § 39-16-701(1). Although the jury was not informed of the nature of the defendant's alleged violation, a rational jury could have found that whether the defendant had violated another term of enrollment in the program, namely whether he had engaged in the sale of illegal drugs, could have affected the course or outcome of the hearing, as the trial court's knowledge of this additional violation could have affected its sentencing decision.

## Admissibility of Hearsay Statement

The defendant argues that the trial court erred by allowing the detective who conducted surveillance on the defendant to testify regarding the conversation that he had with Ms. Johnson, his confidential informant, on May 5, 1998. The detective testified that while he was wiring Ms. Johnson with a transmitting device, she told him that she had already been in contact with the defendant earlier that day. Defense counsel made a timely objection, and the trial court ruled that the hearsay was admissible because Ms. Johnson was still available for cross-examination. We agree that the ruling was error. However, we find it to be harmless error in light of the other evidence presented at trial.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). The detective's statement recounting his conversation with Ms. Johnson was offered for the truth of the matter asserted, as it was offered to prove that Ms. Johnson did indeed have a conversation with the defendant before she met with the detective. Moreover, Ms. Johnson's availability does not cure the hearsay problem.

The trial court admitted the hearsay statement, which had the effect of bolstering Ms. Johnson's testimony because Ms. Johnson had testified earlier in the trial that she had indeed spoken with the defendant before meeting with the detective on May 5, 1998. However, while this testimony was erroneously admitted, the defendant fails to allege how the admission of this testimony affected a substantial right and that the admission "more probably that not affected the judgment" of this case. See Tenn. R. App. P. 36(b). Moreover, the evidence against the defendant was strong, as the defendant's drug sales were recorded and introduced at trial along with Ms. Johnson's incriminating testimony. Therefore, because the defendant has failed to demonstrate that he was prejudiced by this admission and because the evidence against the defendant was strong, we find that the trial court's error in admitting this hearsay testimony was, at most, harmless error.

## Jury Instruction Challenge

The defendant argues that the trial court erroneously denied his requested jury instruction regarding how the jury should weigh the defendant's status as a Community Corrections program enrollee. Specifically, the defendant requested that the trial court instruct the jury as follows:

> You are further instructed that evidence that the [d]efendant was on Community
> Corrections for a four year sentence cannot be considered by you for the purpose of

believing that the [d]efendant had some form of criminal conviction that could affect his credibility or believability, or in any way be used adverse to him in these proceedings. That evidence can be considered by you only for the limited purpose of background information as to why he was participating in this program, and as to the nature of a Community Corrections program. It cannot be used in any way to impeach the character or credibility of the [d]efendant in this case.

However, the trial court instructed the jury regarding the defendant's status as a Community Corrections enrollee as follows:

You are further instructed that evidence of this alleged offense can only be considered by you for the limited purpose of background information as to why the defendant was participating in a program which resulted in his being present at an alleged official proceeding. You may not consider such evidence to prove his disposition to commit such a crime as to that on trial.

After the trial judge informed defense counsel that he had modified the defendant's proposed jury instruction to reflect the instruction above, defense counsel responded that the modified instruction was "fine," and when the trial judge asked for any objections, the prosecuting attorney objected, not defense counsel. We find that the defendant waived any objection to this modified instruction by indicating that the modified instruction was acceptable and by failing to make a contemporaneous objection at trial.[3] Moreover, the defendant fails to allege how the modified charge differed from his proposal in such degree as to render it an erroneous instruction. Accordingly, we find that the defendant has waived this issue on appeal. See Tenn. R. App. P. 36(a).

The defendant also argues that the trial court erred by refusing to grant the defendant's request for a jury instruction regarding ignorance or mistake of fact, as defined in Tennessee Code Annotated Section 39-11-502. Ignorance or mistake of fact is a defense to prosecution, and the trial court must instruct the jury on the defense if it is fairly raised by the proof. Tenn. Code Ann. §§ 39-11-203(a), (c), -502. In determining whether a defense is fairly raised by the proof, a trial court should consider the evidence in the light most favorable to the defendant. State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993). Moreover, if an instruction is warranted, the court must instruct the jury that any reasonable doubt on the existence of the defense requires acquittal. Tenn. Code Ann. § 39-11-203(d). Ignorance or mistake of fact is "a defense to prosecution if such ignorance or mistake negates the culpable mental state of the charged offense." Tenn. Code Ann. § 39-11-502(a).

We find that there was insufficient evidence presented at trial to fairly raise the defense of ignorance or mistake of fact. While the defense's argument is that the defendant was confused by the state's overly broad question posed at the Community Corrections violation hearing and that the defendant was not in fact directly involved in the sale of crack cocaine, there is no evidence to support a theory of confusion, ignorance, or mistake of fact. Defense counsel cross-examined the

---

[3] Moreover, as the state correctly notes in its brief, the defendant asked that the court adopt his requested instruction "or words to that effect" in his request for a jury instruction, thereby implicitly agreeing to the court's modification of his requested charge.

state's witnesses, but during cross-examination, the witnesses refused to concede that the defendant had not been involved in the sale of crack cocaine to Ms. Johnson. Furthermore, the defense rested after the presentation of the state's proof, and neither the defendant himself nor any other witnesses testified and offered proof supporting this theory. See, e.g., State v. Benjamin F. Dishman, No. 03C01-9610-CR-00361, 1998 WL 191447 (Tenn. Crim. App. at Knoxville, Apr. 23, 1998) (finding that an instruction on ignorance or mistake of fact was not warranted because it was not fairly raised by the proof; the defendant did not testify at trial to put forth evidence supporting such a defense and the victim's statements were inconsistent with such a defense); State v. Kenneth Wilson, No. 02C01-9510-CR-00322, 1996 WL 512637 (Tenn. Crim. App. at Jackson, Sept. 11, 1996) (finding that an instruction on ignorance or mistake of fact was not warranted because the defense attorney did not ask any questions regarding the defendant's state of mind and because the defendant also did not testify regarding his own state of mind at the time of the commission of the crime). But see State v. Michael S. Nevens, No. M2000-00815-CCA-R3-CD, 2001 WL 430602 (Tenn. Crim. App. at Nashville, Apr. 27, 2001) (an instruction on ignorance or mistake of fact was fairly raised by the evidence presented at trial based on both the defendant's testimony and his mother's testimony). Because evidence was not presented at trial to fairly raise this defense, we find that an instruction on ignorance or mistake of fact was not warranted, and therefore the trial court did not err by refusing the defendant's request.

## Sufficiency of the Presentment

The defendant argues that the presentment charging him with the offense of aggravated perjury was fatally deficient because the state failed to include in the presentment the nature of the defendant's Community Corrections violation, therefore presenting insufficient information for a jury to determine if the defendant's alleged false statement was material. The defendant also alleges that the presentment was fatally deficient because it failed to comply with the mandates of Tennessee Code Annotated section 40-13-213, which outlines the allegations that must be pled in an indictment alleging perjury. See Tenn. Code Ann. § 40-13-213(b). The defendant further argues that because the presentment was fatally deficient, the trial court erred by refusing to grant the defendant's request for judgment of acquittal[4] or arrest of judgment.

The presentment charging the defendant with aggravated perjury states the following accusation, in relevant part:

> Melvin E. Beard, heretofore, to-wit, on the 28th day of September, 1998, before a
> finding of this presentment, in said County and State, unlawfully, feloniously,
> knowingly and with intent to deceive did make a false statement, under oath, and said

---

[4] Regarding his denied motion for judgment of acquittal, the defendant argues that his motion should have been granted on two grounds: (1) because the presentment was fatally deficient (discussed infra) and (2) because the evidence was insufficient to support his conviction. A trial judge may grant a motion for judgment of acquittal after finding that the evidence presented at trial is insufficient to support a conviction. Tenn. R. Crim. P. 29(a). When reviewing the defendant's sufficiency challenge, supra, we determined that the evidence was indeed sufficient to support his conviction. Accordingly, we find that the trial court did not err by refusing to grant the defendant's motion for judgment of acquittal on the grounds that the evidence was insufficient to support the defendant's conviction.

false statement was made during and in connection with an official proceeding, and said false statement was material, in violation of Section 39-16-703, Tennessee Code Annotated, and against the peace and dignity of the State of Tennessee.

While the above presentment sufficiently alleges the elements of perjury as set forth in Tennessee Code Annotated section 39-16-703, it does not include the specifics mandated by section 40-13-213(b), which provides that an indictment (or presentment) will be sufficient if it alleges

the substance of the controversy or matter with respect to which the offense was committed, in what court or before whom the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer it, with proper allegations of falsity of the matter on which the perjury is assigned.

Tenn. Code Ann. § 40-13-213(b).[5] The state, in response to the defendant's motion for a bill of particulars, filed two bills to satisfy this requirement. The first bill, which set forth the state's question and the defendant's answer to that question that the state alleged constituted aggravated perjury, was filed at least a year prior to the date of the defendant's trial. The second bill, which set forth that the defendant made the allegedly perjured statement in his Community Corrections violation hearing and in which court that hearing was held, was filed at least six months prior to trial.

The function of a bill of particulars is to provide a defendant with information about the details of the charge that are necessary in the preparation of his or her defense and to avoid prejudicial surprise at trial. See State v. Hicks, 666 S.W.2d 54, 56 (Tenn. 1984) (quoting 1 Charles Alan Wright, Federal Practice and Procedure, Criminal § 129, at 434 (1982)); see also State v. Stephenson, 878 S.W.2d 530, 539 (Tenn. 1994). The defendant should be given enough information about the events charged so that he or she may diligently prepare for trial. See id.; see also State v. Hammonds, 30 S.W.3d 294 (Tenn. 2000) (holding that an indictment must inform the accused of the nature and cause of the accusation); Wyatt v. State, 24 S.W.3d 319 (Tenn. 2000) (holding that an indictment serves several purposes, one of which is to provide the accused with notice of the offense charged). Where the indictment is not sufficiently detailed, a bill of particulars will serve this purpose. See Stephenson, 878 S.W.2d at 539.

Thus, the question of whether a bill of particulars is adequate to cure a deficient presentment or indictment appears to turn on whether the bill gives sufficient notice to the defendant to allow him or her to adequately prepare for trial. In the instant case, the state filed both bills of particulars at least six months prior to trial, thereby giving the defendant adequate notice of the wording of the allegedly perjured statement and the context in which the alleged perjured statement was made. Moreover, recent supreme court decisions indicate that the state is no longer required to plead indictments with strict specificity. In Hammonds, the supreme court reversed this Court's finding that an indictment was insufficient, stating that

---

[5]     Tennessee Code Annotated section 40-13-213(a) states that it is not necessary for a perjury indictment to set forth "[r]ecords or proceedings with which the oath is connected[] or[ t]he commission or authority of the court or the person before whom the perjury was committed." Tenn. Code Ann. § 40-13-213(a).

[w]e emphasized in [State v.] Hill[, 954 S.W.2d 725 (Tenn. 1997),] that "an indictment need not conform to traditionally strict pleading requirements." Id. at 727. Since common law offenses no longer exist, "we now approach 'attacks upon indictments, especially of this kind, from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding.'" Id. at 728 (quoting United States v. Purvis, 580 F.2d 853, 857 (5th Cir.1978)).

In many decisions since Hill discussing the sufficiency of indictments, we have repeatedly emphasized the relaxation of strict common law pleading requirements.

. . .

Indeed, Hill and its progeny leave little doubt that indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements.

Hammonds, 30 S.W.3d at 299.

Looking at the instant presentment in the "enlightened standpoint of common sense and right reason," see id., we find that the bills of particulars were sufficient to give the defendant notice of the allegedly false statement that the presentment charged as constituting aggravated perjury. The two bills set forth the language of the allegedly false statement and the context in which it was made, and defense counsel did not indicate that they were surprised or unprepared at trial. We find that the bills of particulars conveyed sufficient information for the defendant to be able to identify the offense for which the defendant was being prosecuted, as required by State v. Cutshaw, 967 S.W.2d 332 (Tenn. Crim. App. 1977).[6] Accordingly, we find that because the defendant was given adequate notice of the nature of the charged offense by the filing of the bills of particulars, the defendant was not prejudiced by any deficiencies in the presentment.

## Sentencing Challenge

The defendant argues that the trial court failed to give proper weight to the enhancing and mitigating factors applicable to the defendant's case and improperly sentenced him to serve five years in confinement as a Range II offender. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are

---

[6] The defendant argues that Cutshaw, a 1977 case in which this Court found a presentment to be insufficient because it failed to sufficiently identify the allegedly perjured statement, is analogous to the instant case and therefore warrants reversal of the lower court's decision. See Cutshaw, 967 S.W.2d at 332. However, unlike in the instant case, in Cutshaw the state did not file a bill of particulars, thereby failing to give the defendant notice of the substance of his allegedly perjured statement. See id. We find that Cutshaw is distinguishable from the instant case on that basis and therefore find that its precedent does not warrant a reversal.

correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of showing that the sentence is improper." Ashby, 823 S.W.2d at 169.

In the instant case, the defendant was convicted of aggravated perjury. The trial court found that based on the defendant's criminal history, he was a Range II offender and that there were both enhancement and mitigating factors that were applicable to the defendant's case. Because aggravated perjury is a Class D felony and because the trial court found both enhancement and mitigating factors to be applicable to the sentencing determination, Tennessee Code Annotated section 40-35-210(e) directs the trial court to start at the minimum sentence in the applicable range, "enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e). Accordingly, the trial court was required to start at the minimum sentence for a Range II Class D felony, four years, see Tenn. Code Ann. § 40-35-112(b)(4), enhance the sentence for the applicable enhancement factors, and then reduce the sentence for the applicable mitigating factors.

The trial court found that the enhancement factors applicable to the defendant's case were the defendant's criminal history, his prior unwillingness to comply with measures less strict than confinement, and his commission of the instant crime while enrolled in the Community Corrections program. The court further found that the mitigating factors applicable to the defendant's case were the fact that his crime neither caused nor threatened serious bodily injury and the unlikeliness that he committed the crime with a sustained intent to violate the law. The defendant argues that the trial court improperly weighed these factors and therefore gave him an excessive sentence. However, no particular weight for each factor is prescribed by statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id. The trial court properly found that these enhancement and mitigating factors were applicable to the defendant's case,[7] as the record supports the trial court's findings. Moreover, because the defendant has not proven that the trial court erred in its application of the relevant enhancement and mitigating factors, the trial court is presumed to have afforded these factors an appropriate weight, and therefore this court will not re-weigh the enhancement and mitigating factors and accordingly impose a different sentence.

The defendant also challenges the trial court's refusal to place the defendant "under probationary restraint." However, the trial court was not required to presume that the defendant was a favorable candidate for alternative sentencing because he is not an especially mitigated or standard offender, but rather a Range II multiple offender. See Tenn. Code Ann. § 40-35-102(6). Moreover,

---

[7] The defendant does not contest the propriety of the enhancement and mitigating factors that the trial court found applicable to his case.

the trial court properly found that the defendant had previously failed to comply with measures less restrictive than confinement, as the defendant committed the instant crime while serving a sentence in the Community Corrections program.  See Tenn. Code Ann. § 40-35-103(1) (stating that a defendant's history of violating terms or conditions of "measures less restrictive than confinement" is a consideration that may warrant confinement).  Accordingly, the trial court found that the defendant should be confined rather than released under probationary restraint.  As the defendant was not a suitable candidate for alternative sentencing, the trial court properly sentenced the defendant to serve his term in confinement.

### Conclusion

For the foregoing reasons, we find that none of the defendant's allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE