IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 22, 2005

## STATE OF TENNESSEE v. SHANE M. MCANALLY

**Appeal from the Circuit Court for Bedford County**
**No. 15666     Lee Russell, Judge**

---

### No. M2005-00774-CCA-R3-CD - Filed May 3, 2006

---

The appellant, Shane M. McAnally, was convicted by a Bedford County jury of misdemeanor vandalism and was sentenced to a term of eleven months and twenty-nine days, with sixty days to be served in confinement. On appeal, McAnally raises two issues for our review: (1) whether the evidence is sufficient to support the conviction; and (2) whether the sixty-day period of confinement is excessive. Following review of the record, we conclude that the evidence is sufficient to support McAnally's conviction for vandalism, and therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined and DAVID G. HAYES J., filed a separate dissenting opinion.

Randall W. Morrison, Tullahoma, Tennessee, for the Appellant Shane M. McAnally.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Mike McCown, District Attorney General; and Richard Cawley, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On February 19, 2004, the Bedford County Sheriff's Department received a call to investigate the presence of vehicle parts and debris located in the roadway at a railroad crossing in Wartrace. Upon their arrival at the scene, deputies were able to follow a trail of fluid to a white Chevrolet truck parked in the driveway of a residence less than one-half mile away. The front end of the truck was almost torn away and "steam-type smoke [was] coming off the front part of the truck." Inside the residence, the deputies were directed to the appellant, who was asleep on a couch. Once aroused, the appellant became extremely belligerent and began "cussing" the deputies and the owner of the residence. The appellant admitted that he owned the truck but denied any involvement in a recent

accident. Because the appellant refused to calm down, he was escorted outside the residence. Once outside, the hostilities continued, in large part due to the appellant's intoxication. As a result, the appellant was placed in the back seat of Deputy Nikia Elliot's patrol car to await the arrival of a State trooper, who had been called to investigate the accident.

Once inside the patrol car, the appellant began "yelling and cussing" and "banging his head on the window." The deputy explained that he returned to the patrol car three or four times to check on the appellant, but, on each occasion, the appellant continued to yell and cuss him. On his last return, the deputy stated:

> I opened the door and he was laughing and he was just zipping his pants up, and I noticed that he urinated all over the glass between the back and the front seat. He urinated all over that. It was running down that, and it was also on the floorboard. And I asked him what that was all about, and he said that's what I get.

Following the investigation, the appellant was charged with leaving the scene of an accident involving property damage, failure to give immediate notice of an accident, and vandalism. On November 17, 2004, he was found guilty of the charges in General Sessions Court. The appellant, on November 24, 2004, filed a notice of appeal to the Circuit Court. Following a jury trial, on February 8, 2005, the appellant was convicted of vandalism under $500 based upon his conduct of urinating in the patrol car, but he was acquitted of leaving the scene of an accident and failure to give immediate notice of an accident. Subsequently, the appellant was sentenced to a term of eleven months and twenty-nine days, with sixty days to be served in the county jail and the remainder to be served on supervised probation. Following the denial of the appellant's motion for new trial, the appellant filed a timely notice of appeal.

**Analysis**

The appellant argues that his act of urinating in the back of Deputy Elliott's patrol car did not constitute vandalism as set forth under Tennessee Code Annotated section 39-14-408 because: (1) the State failed to present evidence that property was destroyed or polluted; and (2) the State failed to present evidence of pecuniary loss or substantial inconvenience. The State argues that the appellant's actions "clearly" amounted to vandalism.

In considering the sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. State v. Pappas,

754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This Court will not reweigh or reevaluate the evidence presented. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Our criminal code defines vandalism as follows:

> **Vandalism. —** (a) Any person who knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any country, city, or town knowing that the person does not have the owner's effective consent is guilty of an offense under this section.
>    (b) For the purposes of this section:
>       (1) "Damage" includes, but is not limited to:
>          (A) Destroying, polluting or contaminating property; or
>          (B) Tampering with property and causing pecuniary loss or substantial inconvenience to the owner or a third person; and
>       (2) "Polluting" is the contamination by manmade or man-induced alteration of the chemical, physical, biological or radiological integrity of the atmosphere, water, or soil to the material injury of the right of another. Pollutants include dredged soil, solid waste, incinerator residue, sewage, garbage, sewage, sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial municipal and agricultural waste.
>       (c) Acts of vandalism are to be valued according to the provisions of § 39-11-106(a)(36) and punished as theft under § 39-14-105.

Tenn. Code Ann. § 39-14-408.

In order to convict the appellant of vandalism, the State was required to prove that he knowingly caused *damage* to the sheriff's patrol car. Although "damage" is not conclusively defined in the statute, the statute does provide that the term includes, but is not limited to, destroying, polluting or contaminating property. The term also includes, but is not limited to, tampering with property and causing substantial inconvenience to the owner or a third person. Although "polluting" is defined as the contamination by alteration of the integrity of the atmosphere, water, or soil to the "material injury of the right of another," the terms "contaminating" and "tampering" are not statutorily defined.

Commonly accepted definitions of "contaminate" include: to soil, stain, defile, taint, make impure, or unclean by contact. See The American Heritage Dictionary of the English Language, 4th ed. (2000); The Oxford English Dictionary, 2nd ed. (1989). Commonly accepted definitions of "tampering" include: "to interfere in a harmful manner," The American Heritage Dictionary of the English Language, 4th ed. (2000), and "meddling, improper interference." The Oxford English Dictionary, 2nd ed. (1989).

Viewing the evidence introduced in this case in the light most favorable to the State, the State proved beyond a reasonable doubt that the appellant intentionally urinated in the back seat area of the sheriff's patrol car as a way of expressing his displeasure with the circumstances in which he found himself. By doing this, the appellant *damaged* the patrol car by contaminating it. Further, by his conduct he tampered with the patrol car in a manner that caused substantial inconvenience to the person who had to clean up the mess that he made. Thus, the evidence is sufficient to support the conviction for vandalism.

**Sentencing**

The appellant complains that his sentence of eleven months and twenty-nine days with incarceration for 60 days is excessive. His argument is simply that his actions do not warrant 60 days of incarceration.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. See Tenn. Code Ann. § 40-35-302(b). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. See State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumptive sentence. See State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). In determining the percentage of the sentence to be served in actual confinement, the court must consider the principles of sentencing and the appropriate enhancement and mitigating factors, and the court must not impose such percentages arbitrarily. Tenn. Code Ann. § 40-35-302(d).

In the instant case it appears that there was no separate sentencing hearing. Given the wide range of discretion vested in trial judges in misdemeanor sentencing and the lack of anything in the record before us that demonstrates that the sentence imposed is patently unreasonable, we decline to reverse the trial court's sentencing determination.

-4-

## Conclusion

In view of the foregoing the judgment of the trial court is affirmed.

_____

JERRY L. SMITH, JUDGE