IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2019

## STATE OF TENNESSEE v. LOUIS DANE DEVILLIER

**Appeal from the Circuit Court for Williamson County**
**Nos. I-CR099102, I-CR099073, I-CR160704   Michael W. Binkley, Judge**

_____

### No. M2018-00565-CCA-R3-CD

_____

The Defendant, Louis Dane Devillier, pleaded guilty to misdemeanor theft, driving under the influence ("DUI"), and perjury, in exchange for concurrent sentences of eleven months and twenty-nine days, with the manner of service of the sentence to be determined by the trial court.  At a sentencing hearing, the trial court imposed the agreed-upon sentence and ordered the Defendant to serve his sentence in confinement.  On appeal, the Defendant contests the manner of service of the sentence, contending that the trial court failed to find specific facts supporting enhancement factors and failed to give "due weight" to mitigating factors.  After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined.  THOMAS T. WOODALL, J., filed a concurring opinion.

Shane K. McNeill, Thompson's Station, Tennessee, for the appellant, Louis Dane Devillier.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Kim R. Helper, District Attorney General; and Tristan Poorman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from three separate offenses, occurring in March and June 2015 and January 2016, in Williamson County.  For his role in these offenses, a Williamson County grand jury indicted the Defendant for burglary of an automobile, DUI, DUI per se, failure to maintain a lane, and perjury.  The Defendant waived his right to a jury trial and, pursuant to a plea agreement, pleaded guilty to a substitute charge of theft under

$1000, DUI, and perjury, in exchange for concurrent sentences of eleven months and twenty-nine days, with the manner of service to be determined by the trial court.[1]

## A. Guilty Plea Submission Hearing

At the guilty plea submission hearing, the State offered the following factual bases in support of the trial court's acceptance of the Defendant's pleas of guilt to each of the offenses.

### DUI Charges

After midnight, on March 12, 2015, Tennessee Highway Patrol Trooper Lance Suggs responded to a crash on U.S. Highway 31 in Williamson County, Tennessee. He "observed a 2015 GMC Denali that was traveling north on U.S. Highway 31 when it crossed over the double yellow line, entered a ditch on the side of the road, jumped a concrete driveway and finally came to rest on the other side of the driveway." The Defendant was identified as the driver of the vehicle. In his interactions with the Defendant, Trooper Suggs observed that the Defendant was unsteady on his feet, had the odor of an intoxicant about his person, and displayed slurred speech. After refusing medical treatment, the Defendant attempted standardized sobriety tasks but was unable to do so.

The Defendant told Trooper Suggs that this was "the third vehicle he had crashed in 2015," and "he also admitted to having two beers and taking Oxycodone, Hydrocodone, nerve medication, and Adderall." Additionally, Trooper Suggs found a Crown Royal bottle located near the vehicle. The Defendant was arrested at 1:00 a.m. and his blood was drawn at 2:30 a.m. to determine his blood alcohol concentration ("BAC"). The results of the testing indicated that the Defendant's BAC was .196.

### Theft under $1000

During the afternoon of June 17, 2015, Spring Hill Police Department ("SHPD") Officer Jeff Alexander responded to an automobile burglary call. At the scene Luis Torres stated that he had purchased a black Saturn Ion from the Defendant on June 14, 2015. The Saturn Ion had been parked in Mr. Torres's driveway when he had left that day. When he returned home, Mr. Torres noticed that the dealership tag had been removed from the vehicle, and he called the police. One of Mr. Torres's neighbors observed the Defendant removing the dealership tag and using a key to enter the vehicle

---

[1]The trial court merged the DUI per se conviction into the DUI conviction and dismissed the failure to maintain a lane charge.

and remove documents. The insurance, registration, and the bill of sale that the Defendant had provided to Mr. Torres were all missing from the vehicle.

### *Perjury*

On January 7, 2016, the Defendant filled out an affidavit of indigency in the Williamson County Courthouse. On the document, he failed to disclose owning a $35,000 boat. He further indicated that he was unemployed. In February 2016, the Defendant made an insurance claim reporting his boat as stolen. During an interview with an insurance agent, the Defendant confirmed that he "purchased a boat [on October 22, 2015], that he was the titled owner of the boat, that it was at least a $35,000 boat, and that he had put extra money into the boat." As to his employment, he told the insurance agent that "he had two companies, Devillier Enterprises and Devillier Auto Sales, and that he worked at [both] of them for a lengthy period of time, several years."

After hearing the State's recitation of the facts underlying the offenses, the Defendant confirmed that the facts, as provided by the State, were "substantially true and correct" and entered guilty pleas to each of the offenses. The trial court entered the guilty pleas against the Defendant, and then the parties proceeded to sentencing.

### B. Sentencing Hearing

The Defendant sought a probated sentence while the State requested that the Defendant's three sentences be served in jail. The parties presented the following evidence for the trial court's consideration in sentencing: Mr. Torres testified that, after undergoing some financial difficulties, he rented a room in a house with his best friend, Jeanette Opoku, with whom he also shared a car. He worked at Walmart stocking shelves at night for two years in order to save enough money to buy another car. With the addition of another car, Mr. Torres planned to obtain a second job to pay off his debt and better his financial situation.

In June 2015, Mr. Torres paid the Defendant $4200 for a Saturn Ion and was provided a bill of sale. The Defendant arranged to meet Mr. Torres a couple of days later, at the County Clerk's office to transfer the title and register the Saturn in Mr. Torres's name. Approximately a half hour after Mr. Torres purchased the car, the "check engine light" illuminated, so Mr. Torres attempted to contact the Defendant. Initially, the Defendant did not respond, but he finally referred Mr. Torres to "these guys" "that could take care of" Mr. Torres. Mr. Torres took the Saturn to the shop and learned that he would have to pay to repair the "catalytic converter." Mr. Torres had already spent $4200 to purchase the car and had no more money with which to pay for repairs. He

declined the repairs. As he drove home, the car "shut off." After several attempts, Mr. Torres was able to restart the car and drove it to his residence.

Mr. Torres testified that it was his understanding, based upon his conversation with the Defendant, that he would be able to return the car and receive his money back. Mr. Torres texted the Defendant that he wanted to return the car, but he received no response from the Defendant. Since Mr. Torres had been unable to speak with the Defendant, he did not know at what time he should be at the County Clerk's office as they had discussed, so he was unable to meet the Defendant and receive the title for the car. He continued to text the Defendant asking for a refund. At some point the Defendant responded, telling Mr. Torres that he was "experiencing buyer's remorse" and that "the deal [was] final."

On June 17, 2015, after confirming that someone had entered the Saturn, Mr. Torres notified the police that the dealer tag had been removed and paperwork taken from inside the car. The police officer advised Mr. Torres that he might want to move the car because the Defendant had "kind of threaten[ed] that he was going to take the car back." Mr. Torres moved the Saturn to a friend's property for a while, but at some point could no longer park the car there. He returned the Saturn to where he was living and, soon thereafter, found someone attempting to tow it. Mr. Torres prevented the towing and called the police again. The police officer advised Mr. Torres to store the car elsewhere to prevent the Defendant from taking it. Mr. Torres moved the car for the second time to a secure area in Shelbyville where it remained until ten days before the Defendant's guilty plea.

Jeanette Opoku, Mr. Torres's best friend and roommate, testified that the loss of the $4200 had impeded their meeting their financial goals. She recalled an "upsetting" telephone call she had with the Defendant in August 2016. During their conversation, the Defendant asserted that "everybody else was basically at fault." Ms. Opoku believed that the Defendant had seen Mr. Torres as "an easy target" and taken advantage of him. She also recalled that initially the Defendant told the police that he had not sold the car to Mr. Torres, allowing for Mr. Torres to be "arrested as a car thief"; however, the police had too much information to the contrary.

The evidence related to the Defendant's conviction for perjury included a copy of the affidavit of indigency and an audio recording of the indigency hearing. The State also submitted Geico business records related to the Defendant's boat ownership and audio recordings of the insurance claim adjuster's interview with the Defendant about the boat and the Defendant's employment. Finally, the State stipulated that the Defendant had successfully completed probation for a Henderson County DUI conviction.

- 4 -

The Defendant testified that he began experiencing health issues in 2014 that took him away from his work responsibilities and this created a financial strain. Ultimately, the Defendant filed for bankruptcy after losing "all the houses and stuff that D-Enterprises owned." As a result of the pain related to his health issues and the work-related stress, the Defendant began drinking more heavily. He was charged with a DUI in Williamson County in March 2015 and a DUI in Henderson County in April 2015. The Defendant stated that he had successfully completed a year-long probation in Henderson County.

On cross-examination, the Defendant had difficulty recalling the details of his prior arrests but confirmed that he was released from jail on bond at the time he committed the DUI offense in Henderson County, Tennessee. The Defendant confirmed that he had testified on direct examination that he had never missed a court date. Upon further questioning, he acknowledged that he had missed a court date related to the Henderson County charge.

The Defendant testified that he believed that he and Mr. Torres were going to complete the car transaction on the Tuesday following the sale. He confirmed, "I did go to the courthouse, yes, to the DMV, yes." When Mr. Torres did not meet him, he "figured" Mr. Torres was "going to wait and come up with the money for the[] taxes . . . or fix the car." The Defendant stated that, given the circumstances, he could not leave a dealer tag on the Saturn and allow Mr. Torres to continue to drive on "the insurance." The Defendant denied entering the vehicle but agreed that he removed the license plate from the Saturn. Despite the Defendant's earlier testimony affirming that the State's recitation of the facts were substantially true, he stated that Mr. Torres and Ms. Opoku were lying about his entering the vehicle and taking the bill of sale.

The Defendant testified that he offered Ms. Opoku the title to the Saturn during their August 2016 telephone conversation. The Defendant stated that he did not "recall anything with towing the vehicle from the house." The Defendant also could not recall Mr. Torres's neighbor testifying at the preliminary hearing about observing the Defendant inside the Saturn; however, the Defendant testified that the neighbor was lying. The Defendant reiterated that he did not intend any harm to Mr. Torres, and he was sorry for the "way the transaction went on." When confronted with the facts that he "took money from [Mr. Torres], and then didn't let [him] title or register a vehicle [the Defendant] sold [him], and refused to take it back," the Defendant asserted that "he tried to give Mr. Torres the title . . . [and] tried to make attempts to repair the vehicle."

The Defendant identified the January 7, 2016 affidavit of indigency that he had filled out. The Defendant stated that he did not indicate his businesses on the form because he was not working at the time due to being "temporarily disabled." The

Defendant stated that, in November 2014, his businesses were insolvent. When asked how he purchased a boat in October 2015 if his businesses were insolvent in 2014, the Defendant clarified that his businesses became insolvent in 2015. He explained that his father gave him the $8,000 for the down payment on the boat and the remainder was secured with one of his businesses.

After hearing the evidence, the trial court stated that it had considered the purposes and principles of sentencing as provided in the Tennessee Code. The trial court then recited the relevant law for misdemeanor sentencing. The trial court stated that it had reviewed the exhibits, the facts of the case, and quoted the principle that "Every Defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense." The trial court acknowledged the importance, as reflected in our sentencing statutes, of "fair and consistent" sentencing.

The trial court acknowledged that restitution had been made in this case and that the Defendant did not have a long history of criminal conduct. With regard to mitigating factors, the trial court considered Tennessee Code Annotated section 40-35-113, factor (1) that the Defendant's criminal conduct neither caused nor threatened serious bodily injury and factor (5) that the Defendant compensated the victim for the damage or injury sustained by the victim. Finally, the trial court considered mitigating factor (11), that the Defendant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. The trial court then stated that it had considered the enhancement factors submitted by the State.

About the Defendant's credibility the trial court stated:
I cannot find that [the Defendant] is worthy of believing with his testimony. And these are the reasons why, at least today: Number one, his answers were evasive, if not nonexistent. There were legitimate, straight forward questions that were asked by the Assistant District Attorney. And the answers were in large part, I don't know, I don't remember, I don't recall, or words to that effect.

All of that indicates to me in reviewing these signs of trustworthiness that at least today in [the Defendant]'s testimony, I find his testimony hard to believe for those reasons. In addition to that, I find that [the Defendant] really had no remorse for what he put these people through.

About the State's witnesses, the trial court stated that it found Mr. Torres and Ms. Opoku credible.

Following these findings, the trial court ordered the Defendant to serve his sentences in jail. It is from these judgments that the Defendant appeals.[2]

## II. Analysis

On appeal, the Defendant contends that that the trial court "erred by not setting forth specific facts to support enhancement factors" and "failing to give due weight to certain mitigating factors." The State responds that the trial court made "robust findings" and the factual determinations "were more than sufficient to justify its sentencing decision" when it followed the statute governing misdemeanor sentencing.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). The trial court must sentence the misdemeanor offender to a determinate number of hours, days, or months, and fix a percentage of that sentence for the offender to serve, after which the offender becomes eligible for rehabilitative programs. T.C.A. § 40-35-302(d). In determining the percentage of the sentence, the trial court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. *Id*. The misdemeanor sentencing statute grants the trial court the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. T.C.A. § 40-35-302(e). There is no requirement for the trial court to make a finding on the record when setting the percentage of the sentence to be served. *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998).

A trial court's sentencing decisions are generally reviewed for abuse of discretion, with a presumption of reasonableness granted to within-range sentences that reflect a proper application of the purposes and principles of sentencing. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *Bise*, 380 S.W.3d at 707.

---

[2] We note, as the State points out, that the Defendant's Tennessee Rule of Appellate Procedure 4(a) notice of appeal was filed nine days late. Nonetheless, we have chosen to waive the timely filing requirement "in the interest of justice."

This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278–79 (Tenn.2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. Crim. App., at Nashville, May 19, 2008), *no perm. app. filed*.

The appealing party bears the burden of proving that the sentence was improper. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see* T.C.A. § 40-35-401(d), Sentencing Commission Comments. Likewise, a criminal defendant seeking full probation bears the burden on appeal of showing the sentence actually imposed is improper and that full probation will be in the best interest of both the defendant and the public. *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995).

In our view, the Defendant has failed to meet his burden of showing that he is entitled to an alternative sentence because he did not present proof as to why confinement is improper and probation is in his and the public's best interest. *Id.* The Defendant argues that the trial court failed to set forth specific facts to support enhancement factors and to give "due weight" to mitigating factors; however, trial courts are afforded a wider range of discretion in misdemeanor sentencing than in felony sentencing. *See* T.C.A. § 40-35-302; *see also, Troutman*, 979 S.W.2d at 274; *State v. McAnally*, 209 S.W.3d 639 (Tenn. Crim. App. 2006). The record shows that the trial court gave proper consideration, but little or no weight, to all of the proposed mitigating factors. Additionally, the trial court provided specific reasons for its ultimate sentencing decision. This court may not re-weigh the mitigating factors provided the trial court followed the principles of sentencing. Given that the enhancement factors were supported by the record and that the trial court considered the mitigating factors as required, we conclude that the record supports the trial court's sentencing decision. The trial court properly considered the principles and purposes of sentencing, the specific facts of this case, and the evidence presented at the sentencing hearing in concluding that the Defendant should serve the agreed upon sentence in jail. Accordingly, we hold that the trial court did not abuse its discretion in sentencing the Defendant to serve his sentence in confinement.

### III. Conclusion

Based upon the foregoing reasoning and authorities, we affirm the trial court's judgments.

_____

ROBERT W. WEDEMEYER, JUDGE